## MINNIE KLETSCHKA v. EMANUEL KLETSCHKA.[1]

January 13, 1911.

Nos. 16,869—(189).

**Testatrix of unsound mind — undue influence.**

> The evidence justified the jury in finding that Mary Kletschka was of unsound mind and incapable of executing a will on February 17, 1907, and that she was unduly influenced to execute a will which devised property of the value of $35,000 to five daughters and one son, but excluded her son, Emanuel Kletschka, the contestant.

The will of Mary Kletschka, deceased, was presented by one of her daughters, Minnie Kletschka, to the probate court for Le Sueur county. Her son Emanuel Kletschka objected to its allowance. The will was allowed and the son appealed to the district court for that county. The appeal was heard by Morrison, J., who found that the will was null and void and ordered judgment for the contestant. From the order denying proponent's motion for a new trial, she appealed. Affirmed.

*Francis Cadwell, M. R. Everett,* and *S. B. Wilson,* for appellant.
*Morgan & Meighen,* and *P. McGovern,* for respondent.

LEWIS, J.

For many years prior to 1900 Vincent and Mary Kletschka, husband and wife, resided in Le Sueur county, accumulated considerable property, and reared a family of seven children, five daughters and two sons. In 1900 the husband was adjudged insane and committed to the St. Peter state hospital, where he remained until the time of his death on February 1, 1907. From 1901 until February 9, 1904, the widow made her home with her son Emanuel, the contestant. From that time she lived, first, for a short time, with her daughter Mrs. Reddy, and then with her daughter Minnie, the proponent, until her death, August 22, 1908. On February 17, 1907, about two

[1]Reported in 129 N. W. 372.

weeks after the death of her husband, the widow executed a will by which she bequeathed all of her property to the five daughters and her son Vincent, and with respect to her son Emanuel the will contained the following provision:

"Having heretofore at different times loaned to my son, Emil Kletschka, money which has never been repaid nor settled, and at other times paid out for him and at his request certain sums of money, I now cancel and release him from liability for the same, and which together with the bequest of one dollar, which I now make to my son Emil Kletschka shall be his share and only portion of my estate in accordance with my will and bequests herein made."

Immediately after the death of Mary Kletschka, appellant presented the will for probate, and the son Emanuel contested it upon the ground that his mother was of unsound mind at the time of its execution, and that she had been induced to make the will by undue influence. The will was allowed in the probate court. The contestant appealed, and the case was tried in the district court. The trial court found as follows:

"1. Said Mary Kletschka died at the village of Waterville, Le Sueur county, Minnesota, on the 22d day of August, 1908, leaving her surviving as heirs at law five daughters and two sons, viz.: Minnie Kletschka, the proponent, Victoria Reddy, Mary Shaw, Molly Kinslow, Julia Janish, Vincent Kletschka, and Emanuel Kletschka, the contestant, all of whom are living and of age."

"4. That at the time said instrument was executed, or purports to have been executed, the said Mary Kletschka, now deceased, was, by reason of old age, physical weakness, and loss and impairment of mental faculties, incapable of executing the same or making a valid will, and did not have or possess mental or legal capacity to make or execute said purported will, or any will or contract, and that the same was not and is not her will.

"5. That said purported will was not prepared by or under the direction of the said Mary Kletschka, now deceased, but was made and her signature thereto secured by the fraud, deceit, duress, and improper influence, unduly, illegally, and improperly exercised over said alleged testatrix by her said daughter, Minnie Kletschka, and

others, at the time said instrument purports to have been signed, and said purported will was and is illegal, null, and void, and of no force and effect whatever."

Appellant argues that there was no evidence to sustain the finding that Mary Kletschka was of unsound mind, or that she was induced to execute the will by undue influence. The record discloses an unfortunate state of affairs in the family. From the time the father was committed to the asylum, appellant appears to have been in charge of the estate, not only of the father, but of the mother, and to have been the directing and controlling force. In 1901 one of the daughters made application to the probate court to have the mother committed to the insane asylum, but her efforts failed; and in 1902 another daughter made application to have a guardian appointed for her mother upon the ground that she was incompetent to care for her property. This application was opposed by other members of the family, and the probate court granted the petition, but upon appeal to the district court the order was reversed.

During 1907, after the execution of the will, while the mother was residing with appellant on the homestead in the village of Waterville, a contract was executed between appellant and the mother, by which appellant agreed to care for and provide for the mother for the rest of her natural life, and the mother deeded to appellant, by warranty deed, all of her real estate, with the exception of her homestead in the village, amounting approximately to more than $30,000 in value. This deed was subsequently set aside in an action brought in the district court.

At the time of her death in 1908 Mrs. Kletschka was seventy-three years old, and for a number of years had been in feeble health. More or less conflict was going on continually over the property and the control of the mother from 1900 to the time of her demise. Appellant claims that her mother was not comfortably housed and cared for during the time she lived with her son Emanuel, the contestant, from 1901 to 1904. There was a conflict in the evidence as to whether she voluntarily left Emanuel to reside with her daughters, or whether she was induced to do so by power of persuasion. The reason advanced by appellant for not providing for the contestant in the

will in the same manner as for the other children was that he had already obtained loans and advances sufficient to equal his share, as stated in the will, and, further, that on account of the neglect and ill treatment, which appellant claims the mother received at his hands, she was fully justified in not providing for him to the same extent as the other children, even though he was not indebted to her in the amount stated.

The evidence was not conclusive that the contestant was indebted to his mother. On the contrary, there is evidence tending to show that the mother was indebted to him at the time of the execution of the will. While the failure to provide for the contestant does not raise a presumption that the mother was unduly influenced in executing the will, that fact is a circumstance which may be taken into consideration in connection with the other evidence in determining whether or not undue influence was exercised. In re Hess, 48 Minn. 504, 51 N. W. 614, 31 Am. St. 665.

The evidence is quite convincing that the contestant and appellant were not, and had not for a long time been on friendly terms. There was a continual struggle over the control of the mother and the property. It was brought out in the evidence that appellant refused to admit her brother, the contestant, and his sons, into her house, and generally endeavored to prevent them from having communication with the mother. Contestant testified, corroborated by his two sons, that while living with him decedent always cried and grieved about the way her husband had been treated, claiming he had been abused by appellant and unjustly sent to the asylum. While the mother lived with appellant, two or three witnesses testified that she continually talked about her troubles, mourning because her children did not get along peaceably, and that she appeared childish and was incoherent in her talk. During the last three years of her life Mrs. Kletschka was kept secluded, and very few of the neighbors, or friends of the family, were called upon to testify as to her condition. The testimony offered by appellant to show that she was of sound mind and able to take care of herself was limited almost entirely to those having charge of her and to the attorney who for

a number of years had transacted the business for appellant, and three of the daughters were not examined.

That Mary Kletschka was feeble and troubled, and at the mercy of her children and dependent on them in everything, is apparent, and the record furnishes ample proof that she was dominated by those immediately in charge of her. Appellant, and her brother Vincent, and sisters, had an interest in keeping contestant from participating in the property. Appellant, particularly, was in a position to exercise her influence, and the evidence is sufficient to sustain the jury in finding that it was exercised.

Affirmed.

SIMPSON, J., took no part.