## DENNIS BUCK v. MARY WHIPPLE BUCK and Others.[1]

July 18, 1913.

Nos. 18,134—(222).

**Granting new trial — discretion of trial court — presumption.**

1. Where a trial court grants a new trial, it is not presumed on appeal that the order was made on the discretionary ground that the verdict was not justified by the evidence unless it is expressly so stated in the order. On the other hand, the court on appeal must presume, in the absence of such

[1] Reported in 142 N. W. 729.

Note. — On the question of burden of proof as to undue influence, see note in 36 L.R.A. 737. And as to the effect of unnatural testamentary disposition on question of undue influence, see notes in 6 L.R.A.(N.S.) 202 and 22 L.R.A. (N.S.) 1024.

statement, that the order was not made upon this ground, and this ground of motion cannot be considered.

### Motion for new trial — verdict contrary to law.

2. Where a motion for a new trial is made on the ground that the verdict is contrary to law, the motion should be granted if, as a matter of law, there is no sufficient evidence to support it; that is, when the evidence is such that, conceding all that it tends to prove, it will not justify a verdict as a matter of law.

### Discretion of trial court.

3. The function of the trial court in determining whether a verdict is not justified by the evidence differs from its function in determining whether it is contrary to law, in that, in the former case, there is the element of discretion, while in the latter case there is not.

### Will — undue influence.

4. In a will contest the burden of proof rests upon the contestant to establish the existence of undue influence. There must be proof of influence which in effect substitutes the will of another for that of the testator. Undue influence is the exercise of constraint, and is a species of coercion. It must, in order to avoid a will, destroy the free agency of the testator at the time it was made, so that the instrument in fact expresses the mind and intent of some one else and not his own.

### Same — burden of proof.

5. This rule as to the burden of proof is subject to the modification that, when the contestant has made out a prima facie case by the production of evidence from which the presumption of undue influence arises, the burden is then upon the proponent to show that the instrument is the will of the testator. There is no definite rule as to what sort of a showing is required to create this presumption. Inequality in the will, and motive and opportunity, on the part of a person preferred, to exert such influence are not sufficient. There must be some evidence that he did exert it.

### Evidence of undue influence.

6. Deceased left no natural children. He left an adopted son who had been married many years. By his will he gave his widow one-third. He gave the adopted son $500, and the residue, amounting to several thousand dollars, he gave to various Baptist church societies. Deceased was a devoted churchman and in his lifetime contributed liberally to the support of these organizations. Their minister and representatives at times called on him socially and also solicited contributions from him. Their relations towards him, so far as appears, were much the same as toward other members and contributors. Some differences had existed between deceased and

the adopted son. The will was made nearly 5½ years before his death. He went alone to his attorney to have it prepared, and he alone dictated its terms. There is no evidence that any one representing any of the beneficiaries ever talked to him on the subject before the will was executed. The evidence is insufficient to sustain a verdict of undue influence or to raise any presumption thereof.

**New trial upon one issue.**

7. At the instance of appellant the court submitted to the jury two issues, one the issue of mental capacity of the testator, the other the issue of undue influence. The former the jury decided in favor of the proponent, the latter in favor of the contestant. Proponent moved for a new trial upon the issue of undue influence, and the court granted the motion. No other motion was made. *Held*, the court properly granted a new trial of this one issue.

Mary Whipple Buck petitioned the probate court for Dodge county to allow and admit to probate the last will and testament of Lewis Buck, her husband, and to be appointed executrix thereof. Dennis Buck filed objections to the allowance of the will. From the order of the probate court admitting the will to probate, the contestant appealed to the district court for Dodge county where the appeal was heard before Childress, J., and a jury which returned a verdict that the testator was of sufficient mental capacity to make a will on the day of its execution, and that the will was procured by the undue influence exerted upon him by the societies to which he made bequests. From the order granting a new trial on the single issue of undue influence, Dennis Buck appealed. Affirmed.

*M. H. Boutelle, R. T. Boardman* and *S. L. Pierce,* for appellant.
*J. J. Truax* and *Lord & Ronken,* for respondents.

HALLAM, J.

Lewis Buck died January 25, 1912, at the age of 79. He left surviving a widow by a second marriage and the appellant Dennis Buck, an adopted son. He left an estate valued at about $25,000. He left a will, dated August 21, 1906, by the terms of which he gave to his widow one-third of his estate, to appellant $500, the balance in equal shares to the Baptist Missionary Union, Baptist Home Missionary Society, Baptist Minnesota State Convention, Bap-

122 M.—30.

tist Publication Society, and Pillsbury Academy at Owatonna, Minnesota. Appellant contested the will on the ground that the deceased was not possessed of testamentary capacity to make a will, and that the execution of the will was procured through undue influence. The probate court found against contestant and admitted the will to probate. Contestant appealed to the district court. He moved there for an order settling the issues of fact to be tried and directing a trial of the same by a jury, and proposed the following questions to be submitted:

"(1) Was Lewis Buck of sufficient mental capacity to make a will on the 21st day of August, 1906?

"(2) Was said will procured by the undue influence exerted upon him by the Baptist Missionary Union or any officer or member thereof, the Baptist Home Missionary Society or any officer or member thereof, the Baptist Minnesota State Convention or any officer or member thereof, the Baptist Publication Society or any officer or member thereof, the Pillsbury Academy or any officer or member thereof, or by any of them or their representatives?"

The court ordered these two questions submitted to the jury. The jury answered "yes" to both questions. The answer to the first question was in favor of the proponent of the will, and the answer of the second was in favor of the contestant. Proponent moved for a new trial upon the second issue on the ground "that the verdict of the jury upon said issue is not justified by the evidence and is contrary to law." The trial court granted the motion without stating in the order the ground upon which he did so. No other motion was made. Contestant appeals.

1. The labors of counsel and of this court would have been much simplified had the trial court made clear the ground on which the motion for a new trial was granted. The statutes of the state provide in terms too plain to be misunderstood that, unless it be so expressly stated in the order granting a new trial, it shall not be presumed on appeal that such order was made on the discretionary ground that the verdict was not justified by the evidence. R. L. 1905, § 4198, subd. 7. This court has heretofore held that, in such a case, resort may be had to the memorandum, if one is filed, for

the purpose of elucidating the order. Gay v. Kelley, 109 Minn. 101, 123 N. W. 295, 26 L.R.A. (N.S.) 742. A memorandum was attached to this order, but it does not make clear that the motion was granted on the ground that the verdict is not justified by the evidence. We are accordingly obliged, by positive mandate of the statute, to presume that this order was not made upon this ground. Hillestad v. Lee, 91 Minn. 335, 337, 97 N. W. 1055; Independent Brewing Assn. v. Burt, 109 Minn. 323, 123 N. W. 932. And this ground of motion cannot be considered. Halversen v. Moon & Kerr Lumber Co. 87 Minn. 18, 91 N. W. 28; Sather v. Sexton, 101 Minn. 544, 112 N. W. 1142.

2. We must accordingly determine whether the order for a new trial was properly granted on other grounds. No specific errors of law were assigned as ground for the motion. Proponent assigned the general ground that the verdict "is contrary to law." This is one of the statutory grounds for a new trial. R. L. 1905, § 4198, subd. 7. There has been some confusion in decisions and in text books as to the meaning of this term. In Valerius v. Richard, 57 Minn. 443, 59 N. W. 534, it was said the term means "contrary to the instructions" and that it is not enough that a principle of law not embodied in an instruction was disregarded by the jury. This is the view adopted in Hayne on New Trials, § 99, and in some of the California cases which are cited by the author.

It is no doubt true that a verdict contrary to the instructions of the court is "contrary to law," but it may be contrary to law for other reasons as well. In First Nat. Bank of Shakopee v. Strait, 71 Minn. 69, 73 N. W. 645, the court through Mitchell, J. said: "A motion for a new trial on the ground that the verdict is contrary to law is somewhat in the nature of a demurrer to the evidence; that is, conceding all that the evidence tends to prove, the verdict is not supported by the principles of law applicable to the facts." This is in harmony with the language of the court in the early case of Alden v. City of Minneapolis, 24 Minn. 254, where it is said, "in considering the question whether it is contrary to law we must assume that state of facts most favorable to the verdict which, under the charge, the jury was at liberty to find." This rule

is sustained by other authority. In Bosseker v. Cramer, 18 Ind. 44, it is said, "a verdict which is contrary to law is one which is contrary to the principles of law as applied to the facts which the jury were called upon to try; contrary to the principles of law which should govern the cause," and the same rule is followed in Candy v. Hanmore, 76 Ind. 125, and Sweeney v. Railroad Co. 57 Cal. 15. In Richardson v. Van Voorhis, 3 N. Y. Supp. 599 (see 51 Hun, 636) it is said, "conceding the evidence to be true, a verdict not authorized by it would be one contrary to law." In Hilliard, New Trial (2d ed.) 486, it is said that the term applies to those cases where the jury must have proceeded on false notions of law. See also 14 Enc. Pl. & Pr. 782; Swartout v. Willingham, 31 Abb. N. Cas. 66; Fitger v. Guthrie, 89 Minn. 330, 94 N. W. 888; Owens v. Savage, 93 Minn. 468, 101 N. W. 790.

3. The function of a trial court in determining whether a verdict is "not justified by the evidence" differs from its function in determining whether it is "contrary to law" in that in the former case there is the element of discretion, to weigh the evidence and determine its sufficiency to sustain the verdict, while in the latter case there is not. See 14 Enc. Pl. & Pr. 768, 782, 784. Metropolitan R. Co. v. Moore, 121 U. S. 558, 7 Sup. Ct. 1334, 30 L. ed. 1022, where the evidence wholly fails to establish a material issue, the sufficiency of the evidence is to be determined by the application of legal principles and is not a matter of discretion. An order granting a new trial for that reason does not spring from the discretionary power of the court. The court in that case is dealing with a question of law. Gustafson v. Gustafson, 92 Minn. 139, 141, 99 N. W. 631; Hull v. Minneapolis, St. P. & S. Ste. M. Ry. Co. 116 Minn. 349, 356, 133 N. W. 852.

This, then, is the question here presented: Is there any evidence reasonably tending to support this verdict? If so, it must be sustained. If not, it was properly set aside. Fitger v. Guthrie, 89 Minn. 330, 94 N. W. 888. After a careful examination of this record, we are constrained to hold that there is no evidence reasonably tending to support the finding of undue influence; in other

words, the evidence is insufficient as a matter of law, and a new trial was properly granted.

4. The burden of proof rests upon the contestant to establish the existence of undue influence. Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885; In re Hess' Will, 48 Minn. 504, 51 N. W. 614, 31 Am. St. 665; Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502; Tyner v. Varien, 97 Minn. 181, 183, 106 N. W. 898; Burmeister v. Gust, 117 Minn. 247, 135 N. W. 980. The rules of law as to what must be proven to establish undue influence are well settled. "To constitute undue influence, the mind of the testator must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influence of persons in close confidential relations with him, that he is not left to act intelligently, understandingly, and voluntarily, but becomes subject to the will or purposes of another." Mitchell v. Mitchell, 43 Minn. 73, 76, 44 N. W. 885, 886. It "must be something which * * * in effect, substitutes the will of another for that of the testator. It may be exercised through threats, fraud, importunity, or by the silent, resistless power which the strong often exercise over the weak and infirm; but, however exercised, it must, in order to avoid a will, destroy the free agency of the testator at the time it was made, so that the instrument in fact expresses the mind and intent of some one else, and not his own." It is the exercise of constraint. It is a species of coercion. Schmidt v. Schmidt, 47 Minn. 457, 50 N. W. 598. "From the nature of the case, the evidence of undue influence will generally be mainly circumstantial. It is not usually exercised openly, in the presence of others, so that it may be directly proved. But the circumstances relied on to show it must be such as, taken all together, point unmistakably to the fact that the mind of the testator was subjected to that of some other person, so that the will is that of the latter, and not of the former; mere ground of conjecture or guess is not enough." In re Nelson's Will, 39 Minn. 204, 206, 39 N. W. 143, 144.

5. The rule that the burden of proof is upon the contestant is subject to this modification: Although the burden of showing that a will was procured by undue influence rests upon those who assert

the fact, still it is held that when the contestants have made a prima facie case, by the production of evidence from which the presump-tion of undue influence arises, "the burden is then upon the pro-ponents to show that the instrument is the will of the testator. It is not very material whether we say that in such a case the burden shifts, or that the evidence produced, aided by the presumption which arises therefrom, is evidence sufficient to make a prima facie case." Tyner v. Varien, 97 Minn. 181, 183, 106 N. W. 898, 899.

There is no definite rule as to what sort of showing is required to create this presumption of undue influence. It is not possible to say that any single circumstance or group of facts is the invariable mark of such a presumption, or that there is any uniform rule capable of application apart from the facts of each case. 4 Wig-more, Evidence, § 2503.

In Mitchell v. Mitchell, 43 Minn. 73, 75, 44 N. W. 885, 886, it is said: "A person will be influenced in the formation of his at-tachments and prejudices, by his associations, relationships, benefits or injuries received, etc. This is natural, and he may, in the exer-cise of his choice, dispose of his property according to his predilec-tions thus formed. But this alone is not enough to warrant an in-ference of such constraint or control over his will as to amount to undue influence."

In re Nelson's Will, 39 Minn. 204, 208, 39 N. W. 143, 145, it is said: " 'It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it.' " See also In re Hess' Will, 48 Minn. 504, 511, 51 N. W. 614; Cudney v. Cudney, 68 N. Y. 148.

In Tyner v. Varien, 97 Minn. 181, 183, 106 N. W. 898, it was said that the fact that the will is harsh and unjust is not in itself evidence that it was induced by undue influence. Nor is the fact that the beneficiary under the instrument had special opportunities to exert undue influence over the testator. There must be evidence, independent of any question of inequality in the will, tending to show acts of undue influence over the testator to procure the will on the part of those who appear to have been preferred.

In Fischer v. Sperl, 94 Minn. 421, 427, 103 N. W. 502, it was said that the facts of relationship and opportunity to exercise influence do not cast on a son the burden of proving that a will in his favor was not obtained by fraud or undue influence.

In Kletschka v. Kletschka, 113 Minn. 228, 129 N. W. 372, it was held that failure to provide for a son does not raise a presumption that the parent was unduly influenced. It is simply a circumstance which may be taken into consideration in connection with other evidence in determining whether or not undue influence was used.

In Sparks' Case, 63 N. J. Eq. 242, 247, 51 Atl. 118, it is held that the mere fact that the proponent stood towards the testator as a priest to a parishioner, coupled with the fact that he was a residuary legatee, does not create a presumption against the validity of the legacy given by the will, and throw upon him the burden of establishing the absence of undue influence, unless these facts are combined with other circumstances tending to show imposition.

6. Keeping these principles in mind, it must be held that there is, in this case, an entire absence of evidence that these societies or any one acting in their behalf exercised any undue influencee over deceased, or that any facts exist out of which a presumption of undue influence could arise. It is true deceased showed much interest in his church and in these societies. He contributed liberally toward their support, sometimes on his own initiative, sometimes on solicitation in person, sometimes by correspondence. It appears that on different occasions he gave money to some of these organizations with a contract providing that they should have the principal, but should pay him a percentage of interest should he ever need it. But his interest in these organizations was only the interest of a devoted churchman. Their ministers and representatives called upon him socially and at times solicited him for contributions, but there is nothing to indicate that their relations with him were different from those existing with other members of the church or contributors to its purposes and work. Deceased went alone to his attorney to have his will prepared. This was 5 years and 5 months before his death. The only testimony that the subject of a will ever came up in any conversation with any member of any of these organizations was

that of Rev. Firth.   He testified that, while pastor of the Baptist church at West Concord, he called on deceased to solicit an offering "for our state and foreign work and home work;" that deceased refused, stating that he had provided for those societies; that witness then discovered that he had made a will making the different societies beneficiaries.

The testator had no natural children.   Contestant, an adopted son, had lived in the family from infancy.   While their relations appear to have been reasonably cordial, there was always a difference between them on religious matters and habits of life.   There is evidence of several instances of this, as follows:

When contestant was 16 or 17 years old, a difference of this sort arose; contestant testified, "he said if I would join the Baptist church, be a Christian boy and join the Baptist church, he would send me to the Owatonna Academy.   I said if I had to be a Baptist to go or to join the church to go to Owatonna, I guess I [would] stay at home.   *   *   *   I didn't go."

Rev. Firth testified that when he learned the manner in which deceased had made his will, he asked deceased why he did it.   Witness gives the answer of deceased as follows:

"He thought he was doing right in making the will as he did, and giving his money to the different societies; that he felt that the money would be well used and that if he gave it to Dennis Buck that it would not be well used; that he had discovered that Dennis Buck was not living a clean life; that he dissipated, drank and gambled and didn't want his money to be used in that way for which he had worked so hard."

In October, 1909, in response to a letter from Rev. Loucks, he sent $50 to be used for contestant and his family.   In the letter accompanying the remittance he wrote as follows:

"Dennis Buck is an adopted son.   Has had big wages and saved nothing.   Went in business and did a large business; saved nothing—why?   Supposed, as near as I can learn, Drink and perhaps Gambling—then sickness.   Last spring I loaned him three hundred dollars.   Sent him a barrel of bed and usefuls.   Then he wanted to hire 50 dollars as a business transaction & save much—so I loaned

him that for two or three months sure pay—Not a dime has been paid. They asked me to buy a modern house for them to hire of me cost $2,700 & I said no. In all they have had 400 dollars during the past six months. Now, have I got to support that family—not in the style they are trying to put on. * * * Perhaps you can see why I send the money to you. I might write a long letter about this matter."

These incidents show differences of such a character that it is not strange that deceased diverted the bulk of his property from contestant. It appears to us that the facts fall far short of furnishing evidence to sustain a verdict of undue influence, or of raising any presumption of undue influence.

7. It is contended that the court erred in granting a new trial as to the single issue of undue influence. The court was not asked by either party to grant a new trial of the issue of mental capacity. The question, therefore, is not whether there should have been a new trial of both issues, but, whether the court was obliged to deny the motion as to one issue as to which a new trial is clearly proper, because the motion involved that issue alone. We are of the opinion that the motion was properly granted as to this one issue. It is a well recognized practice that a new trial may be ordered in a proper case as to part of the issues litigated. Coolbaugh v. Roemer, 32 Minn. 445, 21 N. W. 472; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N. W. 75; Cobb v. Cole, 44 Minn. 278, 46 N. W. 364; Crich v. Williamsburg City Fire Ins. Co. 45 Minn. 441, 48 N. W. 198; Hayne, New Trial & Appeal, p. 13; Smith v. Whittlesey, 79 Conn. 189, 63 Atl. 1085, 7 Ann. Cas. 114, and note page 116; Benton v. Collins, 125 N. C. 83, 34 S. E. 242, 47 L.R.A. 33. All that is necessary for the application of this rule is, that the issues should be so distinct and separable, that one issue can be justly determined without a determination of the other. In an action at law, where the issues are usually single and entire, the practice must of necessity be indulged with caution. In actions equitable in their nature and in proceedings such as this where distinct issues are framed for a jury to pass upon, the practice may be much more liberally resorted to. In this case these two issues were framed for sub-

mission to the jury at the instance of contestant. We are of the opinion that they were sufficiently distinct and independent and that a trial might be had of the issue of undue influence alone. The issues are in a sense distinct. If there be no mental capacity, the issue of undue influence is never reached. If mental capacity is established, then the question of undue influence arises. Some evidence may be pertinent to both issues, but the determination of one is not necessarily involved in the determination of the other. Contestant has not asked for a new trial of the issue of mental capacity. If entitled to it, he still has that right. But whether he is entitled to it or not, the proponents of the will are entitled to a new trial of the issue of undue influence.

Order affirmed.