## PHILIP STEMPER v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

May 28, 1926.

No. 25,216.

**Evidence insufficient to sustain finding automatic brakes were defective.**

A passenger train ran into the rear of a freight train standing on the track. The engineer of the passenger train recovered a verdict on the ground that the automatic brakes were defective. *Held* that the finding that the brakes were defective is not sustained by the evidence.

Appeal and Error, 4 C. J. p. 1186 n. 58.
Master and Servant, 39 C. J. p. 1072 n. 65.

---

See notes in 20 L. R. A. (N. S.) 473; 41 L. R. A. (N. S.) 49; 18 R. C. L. p. 614; 3 R. C. L. Supp. 831; 4 R. C. L. Supp. p. 1199.

[1]Reported in 209 N. W. 265.

Action in the district court for Yellow Medicine county to recover for personal injuries. The case was tried before Baker, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*F. W. Root, C. O. Newcomb, A. C. Erdall, Daly & Barnard* and *Bert O. Loe*, for appellant.

*Tom Davis, Ernest A. Michel* and *Paul D. Stratton*, for respondent.

TAYLOR, C.

Action for personal injuries and a verdict for plaintiff. Defendant appealed from an order denying its alternative motion for judgment non obstante or a new trial.

Plaintiff was the engineer on one of defendant's passenger trains which ran from Dubuque, Iowa, to Savannah, Illinois. On February 21, 1923, he left Dubuque on his usual run under what is termed a permissive order which warned him to proceed "expecting to find a train in the block between this station and Gordon's Ferry," a station about 13 miles from Dubuque. As he was coming into Gordon's Ferry, his train ran into the rear of a freight train standing on the track. A moment before the collision he threw himself through the window of his cab and sustained the injuries for which he seeks to recover.

Plaintiff bases his cause of action on the claim that the automatic brakes on his train failed to work, and that proof of this fact is sufficient to establish that they were defective within the meaning of the Federal Safety Appliance Act.

It is conceded that the brakes were tested in the Dubuque yards while making up the train, were again tested at the station immediately before the train started and were found to work properly in all respects, and that plaintiff himself applied and released them in making these tests. It is also conceded that between Dubuque and the place of the collision plaintiff made two stops with the automatic brakes and that they worked properly and efficiently both times. It is also conceded, or at least not disputed, that when the

train was examined immediately after the collision all the brakes were found tightly set and that the trucks under the cars were tilted forward indicating that they had been pulled down by the action of the revolving wheels on the brakes after they had been applied. Also that another engine was attached to the train and, without any change having been made in the braking apparatus, the brakes were tested and found to work properly, and that the train was then run through to its destination with the braking apparatus unchanged and that the brakes worked properly and efficiently throughout the remainder of the trip. Also that the braking apparatus was inspected at the end of the run and that no defects of any kind were found.

Plaintiff made no attempt to show any actual defect of any sort in the braking apparatus, but rested his case wholly on his own testimony that he tried to apply the brakes and they failed to work. The freight train was around a curve and not visible until within 500 feet of it. A flagman had placed a fusee on the track about 1,400 feet in the rear of the freight. Plaintiff says that he was running at his usual rate of 30 to 35 miles an hour when he saw the fusee; that before reaching it he made a service application of the air but without any result; that the brakes failed to "take hold;" that after passing it he made a second service application of the air also without any result; that he then sanded the track and made an emergency application of the air still without any result; that the brakes still failed to "take hold;" and that he then reversed the engine, opened the throttle and then jumped. His statement that the brakes did not "take hold" stands alone and is contradicted by several other witnesses. The fireman says he felt them "take hold" on a service application and on the emergency application. The baggageman says that the emergency application pitched him forward upon the baggage in the front end of his car. A conductor of another division who was riding as a passenger in the smoker says that it raised him out of his seat.

The engine crushed the caboose of the freight train but fortunately there was no one in it. No damage was done to the passenger train

except that some of the pipes in the front part of the engine were broken. As already stated the train was run through to Savannah with no change except the substitution of another engine. The engine was taken back to Dubuque where the broken pipes were repaired. The apparatus which operates the automatic train brakes was found to be intact; no repairs were made upon it and no change was made in it. The accident happened on February 21. On February 24 the engine was put in service again without any change having been made in the apparatus which operates the automatic train brakes, and it operated them properly and efficiently thereafter.

Plaintiff testified that the brakes failed to work, but that he did not know why they failed. He called S. C. Lush, who had been a conductor in former years, as an expert to show that it was possible for brakes to fail to operate at a particular time and yet operate properly both before and after that time. Lush stated that the rubber forming the inside of the hose might become rotten and broken, and a piece of it be carried by the outrushing air against the air port in the valve controlling the flow of air to or from such hose, or that dirt and moisture might collect in the hose when disconnected and form into a frozen lump or ball and be forced against the air port; that such an obstruction would prevent the air from discharging and the brakes from setting; and that such an obstruction might be dislodged by a violent jolt permitting the air to discharge freely thereafter. However he further stated that such an obstruction would not affect the operation of the brakes on the engine, and also stated that it would not affect the brakes on all the cars but only on some particular car unless it was in the pipe which connects the train line with the valve by which the engineer operates the brakes. This pipe was made of wrought iron and contained no lining to become loose. It leads from the brake valve in front of the engineer to the train line and connects with the train line immediately below the floor of the cab and its entire length is in close proximity to the head of the boiler. The train line had been charged to a pressure of 90 pounds to the square inch by air

forced through this pipe from the air reservoir. There is no evidence of dirt or moisture in any of the air lines, but, assuming that there was dirt and moisture in this pipe and that it had not been driven out in charging the train line, there is hardly a possibility that it could have become frozen into a hard lump in a pipe in the cab and so near the boiler on a comparatively mild winter day. Defendant presented the testimony of a number of engineers of many years' experience on different railroads to the effect that they had never known or heard of such a situation as Lush suggested as possible.

Plaintiff claims that when he attempted to apply the brakes he got no results whatever, hence if they failed to operate because of an obstruction in the air line it must have been located where it would affect all of them, that is, in the pipe leading from the brake valve to the train line. That there was dirt and moisture in this pipe which formed into a frozen mass obstructing the pipe is so extremely improbable, if not impossible, that such a supposition cannot be accepted as tending to explain why the brakes failed to operate at the time claimed by plaintiff and yet operated perfectly immediately before and immediately after that time.

We have here the fact that the brakes operated properly and efficiently up to the time of the accident; that they were found tightly set immediately after the accident; that the trucks were tilted forward indicating that they had been pulled downward by the force exerted on the brakes by the revolving wheels; that the brakes on both the engine and the cars operated properly and efficiently after the accident without any change having been made; and that no one found any defect of any sort in the brakes or braking apparatus at any time. In view of these facts it cannot legitimately be inferred from the mere statement that they failed to work at the time of the collision that they were in fact defective. Spokane & I. E. R. Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. ed. 1125, is cited as justifying such an inference. The court held that "it was a reasonable inference" from the facts in that case that the valves were defective and permitted the air to escape. But that case can-

not be deemed an authority for holding that a "reasonable inference" that the brakes were defective may be drawn from such facts as exist in the instant case. The facts differ too widely.

The case cited which is nearest to the instant case in its facts is C. N. O. & T. P. Ry. Co. v. McWhorter, 203 Ky. 252, 262 S. W. 253. The evidence supporting the claim that there was something wrong with the brakes was much stronger in that case than in the case at bar, yet it was held insufficient to establish liability. See also Slater v. C. St. P. M. & O. Ry. Co. 146 Minn. 390, 178 N. W. 813.

Verdicts must rest upon a more substantial foundation than is disclosed by this record or they cannot be permitted to stand. That plaintiff sustained serious injuries is beyond question, and if he were within the protection of a compensation law he would be entitled to substantial relief. But, so long as the only right to recover for such injuries is that given by the law of negligence, the courts cannot impose liability upon the employer unless it be shown that he was at fault. No fault on the part of the defendant has been shown, and the order is reversed and the court below is directed to enter judgment in favor of the defendant.