## J. S. HERTOGS v. RED-E-OIL COMPANY.[1]

November 18, 1927.

No. 26,306.

**Verdict held contrary to law stated by the trial court.**
    Where a trial court erroneously withdrew from the consideration of the jury the only evidence upon which a verdict in defendant's favor could be predicated, the verdict so rendered must be *held* "not justified by the evidence and contrary to law"—the law as stated by the trial court.

Landlord and Tenant, 36 C. J. p. 448 n. 59.
New Trial, 29 Cyc p. 818 n. 30; p. 820 n. 32, 35; p. 832 n. 60.
Trial, 38 Cyc. p. 1756 n. 93.

Action in the municipal court of St. Paul for the recovery of rent. There was a verdict for the defendant, and plaintiff appealed from an order, Finehout, J., denying his alternative motion for judgment or a new trial. Reversed.

*Brill & Maslon,* for appellant.

*Morphy, Bradford, Cummins, Cummins & Lipschultz,* for respondent.

HOLT, J.

Plaintiff appeals from the order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

Plaintiff on March 15, 1926, leased to defendant for a term of five years a filling station "as it stands." When so let there was office furniture in the building and some "lubricating units." These were removed by a prior occupant before April 1, 1926, the time defendant's term began. There was some protest, but defendant took possession and made improvements, changes, and repairs to the value of $200. Defendant learned, after the lease was made and the first month's rent was paid but before it took possession, that the Pure Oil Company claimed ownership of the two underground

[1]Reported in 216 N. W. 333.

tanks and pumps attached under a conditional contract of sale, and that payment of the purchase price had not been made to it. When the May rent was demanded, defendant refused to pay until plaintiff adjusted the matter with the Pure Oil Company, which threatened to remove the equipment. On May 17 defendant was notified by the Pure Oil Company to empty the underground tanks, for the next day it would come and remove them. On May 18 defendant was in the act of emptying the tanks when plaintiff notified it that he had purchased the equipment from the Pure Oil Company. Defendant, however, continued its moving and by night completed it, claiming there had been a constructive eviction. This suit was to recover the May and June rent. Defendant counterclaimed for the $200 mentioned. The court submitted whether there had been constructive eviction, but so far as we can read the charge made that depend upon the removal of the office furniture and lubricating units, and virtually withdrew from consideration the threatened removal of the underground tanks and connected pumps. What was removed prior to entry under the lease may not be relied on for eviction, it being undisputed that with knowledge that this property had been removed defendant entered and occupied the premises. Bowder v. Gillis, 132 Minn. 189, 156 N. W. 2.

As we construe the lease of this filling station equipped with underground tanks and pumps "as it stands," it included that equipment. It is conceivable that defendant might not desire to treat the removal of the office furniture and the lubricating units as cause for terminating the lease, but that the removal of the more essential and expensive equipment of the underground tanks and pumps would be so treated. Substituting underground tanks and connecting pumps is a work of some consequence and would cause unnecessary interruption of a filling station business, to say nothing of the cost. The Pure Oil Company billed the tanks and pumps to defendant at $500. The jury could find that, even though defendant knew there was a question of ownership of the equipment before it moved in, it safely might rely on the terms and covenants of the lease that plaintiff would take the necessary steps to secure

to defendant the peaceable possession of the leased premises, including the equipment mentioned. Had the trial court submitted the issue of constructive eviction on the evidence relating to the underground tanks and connecting pumps and the conduct of the parties in respect thereto, and withdrawn from consideration the items removed prior to April 1, the verdict might well have been sustained as against plaintiff's appeal, because he would not have been harmed by the fact that defendant's counterclaim was not allowed in full.

Plaintiff, therefore, was not entitled to judgment notwithstanding the verdict. It cannot be said that the judge's charge became the law of the case, for defendant took exception to that part which withdrew from the jury the only evidence upon which constructive eviction could be found. Defendant has a clear right to have the jury determine the effect of such evidence on its defense of constructive eviction.

Is plaintiff entitled to a new trial? We are forced to the conclusion that he is. One of the assignments of error is that the verdict is not justified by the evidence and is contrary to law. The verdict, predicated as it must be on constructive eviction, is not justified by the evidence which under the instructions of the court the jury might consider, namely, the removal of the office furniture and lubricating units prior to taking possession of the leased premises. And if it be said that the evidence withdrawn from the jury by the charge justifies the verdict, the well founded objection is encountered that it is contrary to law—the law as given by the trial court. Buck v. Buck, 122 Minn. 463, 142 N. W. 729, and the cases therein referred to. The only safe rule is that the jury must be guided by the instructions of the trial court. Assuming that this was done, we must hold that the evidence relating to the underground tanks and connected pumps was not considered and that the verdict is not based thereon; hence there is no escaping the conclusion that the other evidence is insufficient to support the verdict.

The order denying a new trial is reversed and a new trial is hereby awarded.