,ARTHUR A. LARSEN v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

June 22, 1928.

No. 26,544.

**Uncontradicted evidence proved spindle on water glass cock did not blow out.**

A spindle upon a water glass cock of a locomotive is claimed to have blown out and injured plaintiff, the fireman. Assuming that the res ipsa loquitur rule raised an inference of the violation of the federal boiler inspection act, the uncontradicted evidence of defendant conclusively establishes that the spindle and the nut which held it were in a safe condition to operate, and the physical condition of the spindle demonstrates that it did not blow out.

Master and Servant, 39 C. J. p. 1047 n. 13.

Action in the district court for Clay county to recover damages for personal injuries. There was a verdict of $25,000 for plaintiff, and defendant appealed from an order, Nye, J. denying its alternative motion for judgment or a new trial. Reversed.

*B. W. Scandrett* and *Frederic D. McCarthy,* for appellant.

*Tom Davis, Ernest A. Michel* and *William Russell,* for respondent.

[1]Reported in 220 N. W. 159.

HOLT, J.

Defendant appeals from the order denying its motion for judgment non obstante or a new trial.

Plaintiff, in the employ of defendant as a fireman on one of its locomotives used in interstate traffic, claims to have suffered personal injuries on November 26, 1925, at Livingston, Montana. In this action to recover damages he had a verdict. The complaint alleges that as such fireman it was plaintiff's duty that day to do the necessary work in preparing said locomotive to haul a passenger train out of Livingston; that it was defendant's duty to furnish him a reasonably safe place wherein to do his work; that it negligently furnished this locomotive in defective and unsafe condition in that it "carelessly, recklessly and unlawfully allowed and permitted a certain part and contrivance thereon, known as a spindle on a valve, or gauge-cock of the water glass attachment, to be and remain in a broken, defective, insecure and dangerous condition and ill state of repair; that said spindle is a contrivance attached to the water glass of said locomotive for the purpose of gauging or testing the amount of water in the boiler of said locomotive." It is then alleged that as plaintiff was shoveling coal into the fire box "said spindle, because of its defective, worn and insecure condition and ill state of repair, was caused to and did blow out, fly into the air, and strike plaintiff in the back of the head," inflicting upon him the injuries set forth, and charges that such injuries "were caused and contributed to by reason of the violation by defendant of the laws of the United States requiring defendant to equip their locomotives with safe and suitable appurtenances."

The locomotive in question had come out of the roundhouse and stood about 120 feet from the turntable ready to assist an interstate passenger train over the hill a few miles to the west of Livingston. It carried about 180 pounds of steam. Plaintiff and the engineer had been in charge for about ten minutes, the engineer being engaged in oiling towards the front of the locomotive and plaintiff in shoveling coal into the fire box, when, as he claims, the spindle of the lower water glass cock blew out striking his head with such

force that he does not know how he got out of the cab, but does remember seeing the spindle roll on the floor. His fellow servants attracted by a pop as of a breaking water glass and the accompanying noise of escaping steam approached the cab and found him lying outstretched on the ground below the gangway, apparently unconscious.

A more particular description of the spindle, its function, and how held may be advisable. The spindle itself is a rod, of half-inch diameter and five inches long, made of the usual brass or bronze alloy found in the equipment of locomotives. It fits snugly into a hollow tube, called the water glass cock. This tube is screwed into the boiler five feet and four inches above the floor of the cab and seven inches to the left of the door of the fire box. Several inches higher a similar cock is screwed into the boiler. Between the two is placed the water glass sunk into the cocks and tightly fitted. By means of the spindle in each cock the flow of steam and water may be let into the glass or shut off therefrom. It is a safety device by which those in charge of the locomotive may always learn of the stage of water in the boiler. The orifice or hole in the cock is only the size of a lead pencil from where it enters the boiler until just before it reaches the opening to the water glass, and from there on to the outer end of the cock the diameter of the orifice is one-half inch into which the spindle fits. A disc or handle of three-inch diameter is affixed to the outer end of the spindle. Next to the handle, and for about an inch in length, there are raised threads on the spindle to screw into a nut having corresponding threads which is screwed onto the end of the cock. There were 18 threads on this spindle. The usual number of threads is from 14 to 18. The nut is long with the end towards the boiler enlarged so as to receive the threads on the end of the hollow tube or cock which is nearly an inch in diameter. The enlarged part of the nut is threaded to fit the threads upon the end of the cock and is of sufficient depth to permit packing gaskets to be inserted so that, when the nut is screwed onto the cock and the spindle screwed into the nut, by screwing down the nut on the cock the packing tends to prevent

steam from reaching the threads of the spindle. The inner end of the spindle is beveled, so that when fully turned in the orifice to the boiler is completely closed preventing steam or water passing from the boiler into the water glass or gauge. The normal position for the spindle, when fire is maintained under the boiler, is turned out from being completely closed from one and one-half to three turns. That means, from one and one-half to three threads of the spindle are out of the nut and not engaged with the grooves or threads of the latter.

Defendant insists that plaintiff staged the so-called accident; that it was impossible for him to have got out through the narrow gangway of the cab if struck so that he became unconscious; that as he stood with the left side towards the spindle it could not strike the right side of his head, where he claims he was struck; that the outstretched position of his body when found, glasses in place and unbroken and his clothing dry, indicate that in some way he managed to unscrew the spindle and get out of the cab without being touched by the escaping steam and water; and that he has simulated injuries ever since. As there is to be a new trial, we refrain from discussing the evidence relating to these matters. It is enough to say that the testimony in respect thereto was in conflict and properly raised jury questions. But a new trial was asked on the ground that the verdict was not sustained by the evidence and was contrary to law. This the trial court denied, and the ruling is assigned as error here.

The negligence charged against defendant was predicated upon the violation of the federal boiler inspection act, approved February 17, 1911, 36 St. 913, amended March 4, 1915, 38 St. 1192, in that the spindle was an unsafe part or appurtenance upon the locomotive. The jury were instructed as to its application thus:

"The act deals solely with the mechanical construction and maintenance of locomotives and was passed for the safety of travelers and employes. It did not in express terms require the railway company to furnish a spindle that could not come out of position. The act does not refer to any kind of a spindle but does provide

that the locomotive, tender and all parts and appurtenances thereof shall be in proper condition and safe to operate in the service to which the same are put. If the railway company furnished a spindle which, when properly screwed into place would not come out, then it has complied with the law."

We think this is a correct construction of the law. The safety or proper condition of any part or appurtenance of a locomotive must be determined, under the act, as it is or functions when in the place or position it was designed to be in when the locomotive is in operation or carries steam. The boiler is required to be safe when the proper stage of water is maintained therein, and these spindles when screwed into the place in which they were intended to be kept when steam is up. The boiler inspection act is similar to the federal safety appliance act in that the duty of the railway company thereunder is absolute and continuous to have the locomotive equipped with parts and appurtenances which are safe when in their normal places. B. & O. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. ed. 419. But it is not an insurer. Violation of the act constitutes negligence which, if found a proximate contributing cause of an employe's injury, requires the railway company to respond in damages. In other words, plaintiff's cause of action is predicated upon negligence of defendant, and he has the burden of proof.

If under the quoted instruction there is no evidence to support a finding that the spindle was unsafe when screwed into its normal position, then the verdict must be held contrary to law as well as not sustained by the evidence. Buck v. Buck, 122 Minn. 463, 142 N. W. 729, and the cases cited therein, and also Hertogs v. Red-E-Oil Co. 172 Minn. 598, 216 N. W. 333.

Plaintiff, on authority of M. & St. L. R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. ed. 995, claims that the circumstance that the spindle came out gives rise to an inference that it was in an unsafe condition. The application of res ipsa loquitur to an instrumentality which in its use is designed to be moved from one position to another by the one in charge thereof may be doubted.

This spindle is not like a footboard or grabiron, or even a coupler, which are not to be moved but at all times firmly affixed. Spindles of water glass cocks are to be moved in or out as the occasion, in the judgment of those in charge of. the locomotive, requires while steam is up in the boiler. But for the purposes of this decision we may concede that plaintiff could invoke the doctrine of res ipsa loquitur. Sullivan v. M. St. Ry. Co. 161 Minn. 45, 200 N. W. 922; Kay v. Metropolitan St. Ry. Co. 163 N. Y. 447, 57 N. E. 751, quoted with approval in Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. ed. 815, Ann. Cas. 1914D, 905. However that only gives rise to a rebuttable inference. Outside of that inference plaintiff adduced no proof whatever as to the condition of the spindle or of any defect therein. He testified that it blew out, and then produced a so-called expert who had never seen the spindle but who gave as reasons for its blowing out worn threads in the nut or on the spindle and defective packing. It is self-evident that the packing does not and is not designed to hold the spindle in the cock. The threads in the nut werè not defective or worn, for the evidence is undisputed that another spindle was inserted, the steam and water stopped, and with another fireman the locomotive proceeded upon the intended trip.

The spindle which came out was found on the cab floor as soon as the insertion of the other spindle shut off the escaping steam. It was kept, and when the locomotive returned from its trip the cock from which the spindle came was removed. Upon each part was stenciled the number 1730, the number of the locomotive in question. They were kept unused until June 15, 1926, when again installed in the boiler of locomotive 1730 and tests made, the steam carried being 182 pounds pressure. At the trial the same locomotive, equipped with the same spindle and cock, was without objection received in evidence. Thereupon the jury were taken to the place where it stood carrying a steam pressure of 182 pounds. They were cautioned not to consider what they saw as evidence, but merely as an aid for the better understanding of the testimony heard in court. They were not to turn the spindle or see it turned.

They were required to depend wholly upon the oral testimony of witnesses as to the alleged defective condition of the spindle.

We likewise must decide the case upon what the jury could ascertain from the evidence in the form in which it was before them, and not upon the appearance of the·unscrewed parts of the water glass cock and spindle as produced before us at the argument. That the spindle which came out and the cock from which it came out are the identical ones with which the tests were made and which were installed when the locomotive was received in evidence is so conclusively proved that the jury were bound to accept that as true. The undisputed testimony is that there were no defects upon the spindle, except that the three inner threads were worn down, evidently by the packing into which it screwed when fully turned in; that the normal position of the spindle is, as already stated, from one and one-half to three turns or revolutions of the handle out from a tightly closed position; that there were no stripped or shredded threads upon the spindle as there would have been had it been blown out while such threads were engaged with the threads in the nut; and that the tests on June 15, 1926, showed that there was no visible steam escaping from the cock until the spindle was turned out five turns, and that when turned out nine and one-half full turns it held firmly, but steam was then escaping from the cock so as to wet the clothing of a person standing within two feet thereof. Plaintiff admitted that he looked at the glass before the spindle blew out but saw no escaping steam. One of defendant's witnesses testified that at the test the spindle held firmly when turned out 12 revolutions. That means that 12 threads were outside the nut, and that six threads, three of which were those worn down, held the spindle securely.

There is nothing in the record casting any doubt upon the tests made or discrediting in any manner the testimony offered by the defendant in regard to the physical condition of this spindle. And plaintiff's sole expert admits that it could not have blown out if screwed in properly without stripping or shredding the threads upon it. It follows that the physical condition of the spindle, as conclusively established by the uncontradicted evidence adduced

by defendant, demonstrates that it did not blow out from the cock but was either purposely or negligently turned out. Larson v. Swift & Co. 116 Minn. 509, 134 N. W. 122; Karras v. G. N. Ry. Co. 167 Minn. 140, 208 N. W. 655.

If a stranger had turned this spindle out of place or if a fellow servant had so done and injury resulted to plaintiff, he could not predicate recovery upon a violation of the boiler inspection act except upon proof that some unsafe or defective condition of the spindle was a proximate concurring cause of the accident. In the proper use of the spindle the three worn threads—the only portion thereof which could be claimed defective—could not and did not contribute to the accident. There must be proof of cause and effect amounting to more than speculation. Stemper v. C. M. & St. P. Ry. Co. 167 Minn. 379, 209 N. W. 265.

We are forced to the conclusion that the evidence does not support the verdict upon the law so given by the learned court. It is not a case for judgment non obstante.

The order denying a new trial is reversed.

DIBELL and HILTON, JJ. (dissenting).

We think the verdict should stand and we therefore dissent.