### CHARLES O. BRENNAN v. NETTIE M. HOLASEK.[1]

October 30, 1936.

No. 30,991.

*Peter E. Kamuchey,* for appellant.

*Stinchfield, Mackall, Crounse, McNally & Moore* and *Donald A. Holmes,* for respondent.

[1]Reported in 269 N. W. 395.

LORING, JUSTICE.

This was an action to recover alleged assets of the estate of which plaintiff was administrator *c. t. a.* He asserts that the defendant obtained them by fraud and undue influence. The case was tried before a jury, but at the close of the plaintiff's evidence the court directed a verdict for defendant. The plaintiff appeals from an order denying his motion for a new trial. The question presented by this appeal is whether there is sufficient evidence of fraud to make a case for the jury.

The short facts are that John Chastek, a veteran of the Civil War, died May 24, 1924, at the age of 87 years, leaving him surviving a widow, Anna Pribyl Chastek, five daughters and three sons. George, a son, was appointed administrator of his father's estate. At the time that John died he left a bank account of $1,014.69, representing the savings of himself and Anna from the small farm which he had owned. This money was paid to Anna by the bank after her husband's death. George brought suit as administrator against his mother and the bank for the amount of this bank account, and the case was settled by the payment of $800 by Anna, who was then 79 years old. She was, however, a woman who apparently looked after her own business, and, though she went to George's house after her husband's death, she remained there only a few weeks and then went to the defendant's home, where she lived until, in the late fall of 1924, she and the defendant and the defendant's husband moved back to the old Chastek homestead. Defendant's husband died in June, 1925, after which defendant built a house in Hopkins, and her mother lived with her there except for about three months when she lived with another sister or when she was visiting or traveling. From a government pension and rentals she had an income of about $85 a month. Anna died September 13, 1933. Her property immediately prior to her death consisted of a joint interest in $3,000 in Minneapolis Gas Light stock, $300 in notes of Mrs. Dominick, $1,108.16 in the Farmers & Mechanics Bank in Minneapolis, and a fur coat. All of the property, except the coat, was held jointly by her with the defendant. To follow the details of how Mrs. Chastek came to put her

money and investments into joint ownership with defendant would extend this opinion beyond reasonable bounds. Plaintiff took six days to put in his evidence, and the trial court patiently allowed him to explore as far as he chose in his endeavor to show fraud and undue influence upon the part of the defendant. We have carefully examined the testimony and find no evidence which would have justified the trial court in submitting the case to the jury.

The plaintiff relies principally upon five items of evidence to indicate that there was fraud or that property was obtained by some undue influence. One was an alleged statement by the defendant that her mother had put the money and property in a joint account so that George would not get it. Another was an alleged request by defendant to another sister to get George to waive his interest in her mother's estate. A third was a statement to one of the sisters: "Some of you girls will have to take stock." And a fourth was a statement by her to a banker who had found a will made by her mother and who had sent it to the probate court. This statement was in the nature of a reproach. "What have you done now?" And the principal item of evidence was an offer of proof of a conversation which Mrs. Chastek was alleged to have had with a lawyer relative to having a guardian appointed to take her property out of the hands of defendant. We need not determine whether the trial court rightly excluded it. Even if it had been admitted, it would not change the result here. It showed no more than a present purpose to change the existing arrangement. The inference is just as strong, or stronger, that Anna was then in tow of the dissenting children and subsequently changed her mind about the matter as it is that she had been fraudulently or unduly influenced to make her widowed daughter a joint owner.

Taking all the testimony together, it shows no more than a purpose on the part of Anna to have her property in joint ownership with defendant. This purpose is explained no further than that it may have been in part a desire to prevent George from getting it. The inference that she was arranging her property so that her eldest daughter, who alone of all her daughters was a widow and childless, should be the owner is just as strong as any other infer-

ence that can be drawn from the facts. Certainly no inference that fraud was practiced upon her or that she was unduly influenced by defendant can be drawn from any of the evidence admitted or offered. Apparently the other children knew of the joint ownership or they would not have taken their mother to a lawyer. There is no evidence whatever that the defendant exercised threats, fraud, importunity, or the "silent, resistless power" of the "strong over the weak." Nowhere is there indication that the will of the defendant was substituted for that of Anna. Defendant may have been ignorant of her rights as a joint owner, but we find no evidence of fraud or of any influence overcoming the free agency of Anna. In Kletschka v. Kletschka, 113 Minn. 228, 129 N. W. 372, a will contest, the testatrix was found incapable of making a will. There is no finding of unsoundness against Anna. The other cases cited by plaintiff we have examined and find not in point. Twice petitions for guardianship of Anna and her property had been dismissed. The most that plaintiff proved was opportunity to exercise undue influence. More than that must be shown. Anna lived for years with Nettie. Nothing could be more natural than that her affection for her childless, widowed daughter would impel her to do just what she did do.

Order affirmed.