## GERVASE SMITH v. HENCIR-NICHOLS, INC.

150 N. W. (2d) 556.

April 28, 1967—No. 40,710.

*Cragg & Barnett* and *David A. Bailly*, for appellant.
*Schermer & Gensler* and *Irvin E. Schermer*, for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment of the district court.

Plaintiff, Gervase Smith, purchased a new 1964 Rambler automobile from defendant, Hencir-Nichols, Inc., on Tuesday, October 15, 1963. His wife testified that she picked up the car the next day and drove it to her home; that on Thursday morning, October 17, she drove the car to work and on her way noticed that the horn did not function properly, so she stopped at defendant's garage where a mechanic "thought" he fixed it, but as she continued on her trip the horn again "died out."

The witness said that the next morning, Friday, October 18, she brought the vehicle to the garage and talked to a serviceman there who said he "would have to pull the steering column or something" to locate the trouble; that he told her to leave the car there as it would take quite a while; and that they let her take a "loaner." She said that she received a call about noon from defendant's garage and was told that she could pick up the vehicle, which she did and drove it back to work; that she then noticed that there was something wrong with the steering; that it didn't hold true to the road and "felt like it was pulling to the rightish." She stated that plaintiff, her husband, drove the car over the weekend and that they brought the car back to defendant's garage on Monday morning, October 21, and picked it up that evening. She claimed that they talked with a mechanic named Al who said the car was ready but that they wanted to road test it and do a little more work on the steering; that Al and another employee drove the vehicle out of defendant's garage, were gone for approximately 10 minutes, and on returning said that the car was then "okay." The

witness drove the car to work again the next day, October 22, but found that it was not much different than before.

Plaintiff, a traffic officer with the Minneapolis Police Department, testified that he drove the automobile Saturday, October 19, and again the next day. He noticed that the horn was not working and the gas pedal stuck; that the steering wheel did not seem to return properly; and that by Sunday the wheel was worse in that it was returning more slowly and would start to bind, but when he gave it a little push it would return. He also stated on cross-examination that the only thing he noticed about the car was that the steering was a little stiff. He said that when he and his wife returned the car to defendant's garage about 8 o'clock Monday morning, pursuant to a previous arrangement, he told Al that the three main complaints about the car were the horn, the steering, and the accelerator pedal sticking, and asked him to adjust the wheel so that it would work properly.

Plaintiff returned to the garage about 5 p. m. that evening with his wife and was told by the mechanics that the horn was working; that the accelerator pedal was all right; and that they had done a little work on the steering and were going to take it for a road test. He said that Al and another mechanic drove the car out of the garage and were gone about 10 minutes; that when they returned Al said that they had stopped and made a few adjustments with the steering and that everything was perfectly safe. The witness said that he relied on that statement. His wife drove the car to their home that evening and to work again the next morning.

Plaintiff said that he drove the car on Tuesday evening, October 22, to a local American Legion post where he worked as a "caller" at a bingo party. He noticed nothing unusual about the steering on his way. The bingo party and clean-up work were over about 12:30 a. m. and from then until about 3 a. m. he remained at the club and played cribbage with three other members. He said that he had one highball immediately following the clean-up job.

When he left the Legion hall, he drove about a block southeast on Broadway and was taking a left turn to the north on Penn Avenue

when he ran into a telephone pole located on the northeast corner of the intersection. Plaintiff said that he turned the steering wheel but that it only went "so far"; that he gave it a jerk one way and another and that it "wouldn't give." He estimated his speed at the time at 10 to 15 miles per hour when the wheel "froze."

Police officers arrived at the scene of the accident shortly afterwards and took plaintiff home. the damaged car was towed to defendant's garage for repair. Later that day plaintiff and his wife went to defendant's garage to inspect the damage to their automobile. Plaintiff claimed the wheels were still in the same position and when his wife tried to turn the steering wheel to see if the wheels would turn she could not move them.

Mr. Elden R. Sagedal, also known as Al, testified that he was the service manager for the defendant at the time of the sale in question and had been in its employ for 14 years. He said that the service department inspects new cars before they are sent out. He also said that there were only two reasons why a steering wheel could lock—one, a broken part inside the gear box, such as a broken tooth off the tube gears, the worm gears, or the sector gears; the other, a rock or stick from the street becoming lodged in the front-end suspension. He said that after the accident he inspected the gear box and the gears and also the front-end suspension and found nothing wrong. He stated that there were no records in defendant's file dealing with any work orders for plaintiff's car from the date of its purchase until the time of the accident.

Mr. Richard Keisling, an employee of the defendant for about 15 years whose principal duty was servicing new cars, stated that he inspected the car sold to the plaintiff and found nothing wrong with the steering mechanism or with the steering when he road tested the car.

Mr. Charles Matuska, a body repairman for the defendant at the time of the accident, testified that he did repair work on the car after the accident; that the steering shaft on the steering column was bent; and that it was impossible to steer the vehicle with the bent shaft. In his opinion it would take terrific force to bend a steering shaft as it was when he

observed it. The witness removed the gear box from the automobile following the accident. He said that he found nothing wrong with the worm at the end of the shaft, the Pitman arm, or the gear at the top of the Pitman arm; nothing unusual or different about the gear box; and nothing wrong inside the gear box when he inspected them. Neither did he find any foreign matter in the gear box.

The case was tried before a jury on the theories of negligence and breach of warranty. It found for the plaintiff in the sum of $2,500. Judgment was entered, and this appeal was taken from the judgment.

Defendant raises the following legal issues on appeal: (1) Where an accident was caused either by a broken steering gear tooth or by foreign matter on the roadway being thrown up into the steering assembly and there was no evidence making one cause more probable than the other, is the jury allowed to speculate as to the cause of the accident? (2) Where the purchaser of an automobile sues a dealer for negligent inspection or repair of a new car, is the buyer entitled to recover without having shown any defect in the automobile or the cause of such defect? (3) In an action for breach of warranty by a purchaser of a new automobile against a dealer, may the purchaser recover without showing a defect in the automobile?

Defendant argues that where there are two explanations for an accident, only one of which would result in liability on the part of defendant, plaintiff must show that the one resulting in liability is the more probable. Defendant cites as controlling Jessen v. Schuneman's, Inc. 246 Minn. 13, 73 N. W. (2d) 786, and Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243.

The Jessen case involved an action in behalf of a minor child for personal injuries she sustained in an accident with a coffeemaker purchased from the defendant and an action by her father for her medical expenses. The actions were commenced and tried on the theory of a breach of implied warranty of fitness for the purpose for which the coffeemaker was sold. The trial court granted defendant judgment notwithstanding verdicts for plaintiffs on the ground that the evidence was insufficient to warrant an inference that the article was not reasonably fit for the use for which it was intended. Mrs. Jessen had purchased

the coffeemaker from defendant. She testified that she was told by the saleslady that the coffeemaker was guaranteed by defendant, which was denied by the saleslady. Upon delivery of the coffeemaker, Mrs. Jessen examined it and found no defects, washed it, and put it away in a cupboard. After using it twice without difficulty, the third time she used it she filled the coffeemaker with water and coffee and placed it on one of the front burners of a gas range about 3 feet high. About 10 minutes later, she heard a scream from her 13-month-old child, whom she found covered with coffee grounds and hot water. The top part of the coffeemaker was on the floor a couple of feet from the child and the bottom half, with half an inch of water in it, was still on the stove. No part of the coffeemaker was cracked or broken, and no one heard any explosion or noise before the child screamed. Thereafter, the coffeemaker was taken to the Twin City Testing Laboratory intact. Plaintiffs contended that the upper portion was then broken by a chemist, apparently before any test could be made. At the trial no one from the laboratory was called so we assumed that nothing was found wrong with the coffeemaker there. Two expert witnesses in behalf of defendant were of the opinion that under the evidence it would be impossible for the coffeemaker to generate enough pressure in the lower part after the water had gone to the top part to blow the top part off from the bottom of the apparatus. We held that in an action based on breach of implied warranty of fitness in the sale of merchandise the burden rests upon plaintiff to prove the warranty and a breach of it and that the evidence failed to establish a breach of warranty of fitness for the use for which the coffeemaker was intended.

In Hanrahan v. Safway Steel Scaffold Co. *supra,* plaintiffs sought to recover for injuries they sustained from the fall of a scaffold upon which they were working. The scaffold was furnished by defendant to plaintiffs' employer. At the close of plaintiffs' case the court granted defendant's motion for a directed verdict in its favor, and plaintiffs appealed from the court's order denying their motion for a new trial. There was no testimony on the part of plaintiffs as to what caused the breaks which were discovered in the scaffold after it fell—whether they occurred after it hit the cement floor, or from several other pos-

sible causes. In affirming the trial court we held that under the facts and circumstances the evidence was not sufficient to create jury issues on the questions of negligence or a breach of warranty by the defendant.

Applying the reasoning of these cases, defendant here argues that the injury or damage to plaintiff was brought about either by a broken gear tooth in the steering gear or some foreign matter lodged in the steering apparatus of the car and that the real legal issue to be decided here is *whether the evidence preponderates in favor of the broken-gear inference.* It is defendant's position that the evidence does not preponderate in favor of the broken-gear theory, but that, on the contrary, there was no evidence whatsoever of a broken gear. It calls our attention to the testimony of two of defendant's mechanics who inspected the gears after the accident, both of whom defendant claims testified that the entire gear-box assembly was in perfect working condition. It also reasons that the foreign-matter theory is no more improbable than the broken-tooth theory—that both are possible and neither impossible.

Defendant further argues that the complaints made by plaintiff and his wife before the accident in no way relate to the cause of the "freezing" of the steering wheel and cannot be used on the burden-of-proof scale in favor of either the broken-gear theory or the foreign-matter theory. It is defendant's contention that it is impossible to draw any conclusions whatsoever from the evidence as to how the steering wheel "all of a sudden froze in the hands of the plaintiff."

Plaintiff contends that the issues of negligence and breach of warranty were jury issues. As to negligence he agrees that there were only two possible causes for the locking of the steering mechanism as described by defendant and claims that of the two theories the broken-gear explanation was the more probable and that the jury could properly find that the locking was not due to external causes. In that connection, the court said, in its order denying defendant's post-trial motion:

"* * * It was a new car and the plaintiff had had some difficulty with the steering. He took the car to the defendant company to have

the condition corrected. The steering apparatus had stuck at times prior thereto. When he took the car out of the defendant garage after its inspection the apparatus again stuck and the car ran into a tree. The defendant company examined the car thereafter and found nothing the matter with it. The factor complained about by the plaintiff was that the steering apparatus stuck. After the accident the same condition continued to exist. The jury found that the defendant was the negligent cause of the accident.

"In sustaining the position of the plaintiff the court has to proceed on the basis that the fault in the apparatus was that it stuck. The feeling of the court is that nothing more need be shown."

We are confronted here with a close question as to whether, under the entire record, the jury was justified in returning a verdict for plaintiff. A review of the court's charge discloses that the jury was informed of plaintiff's claim that the defendant should be liable on the grounds that it had breached a warranty as to the safety of the car and also that it was negligent in letting the car out to plaintiff and his wife in the condition claimed by plaintiff. The court also stated:

"* * * [I]t was obvious in the arguments of the attorneys that there is sharp disagreement between them as to the real cause of the accident.

"How it happened and what occurred and whether there was a breach of warranty and who, if anybody, was negligent or any negligent cause of the accident is for the jury to determine * * *.

"You are the sole judges as to whether a witness who has testified is to be believed and also as to the weight to be given to such a witness' testimony."

The jury heard the testimony of plaintiff and his wife that the car was returned to defendant's garage on at least three occasions for services because of complaints between the date the car was delivered on October 16 until it was returned after the accident on the early morning of October 23. As against that evidence it heard testimony from Mr. Sagedal that defendant had no record of the car ever having been returned between those dates. The jury returned a verdict for

plaintiff which implies, at least, that it accepted the testimony of plaintiff instead of defendant's witnesses.

It is our opinion in the light of all the evidence that the jury could determine that the evidence preponderated in favor of the broken-gear inference. To do so, we realize that the jury would have to find either that defendant's mechanics were not testifying candidly or failed to find the defect in the gears, as there was evidence to support a finding that the cause of the accident was such a defect which, after being informed of facts indicating its existence, defendant failed to discover.

The rule is well settled that findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole. Grant v. Malkerson Sales, Inc. 259 Minn. 419, 108 N. W. (2d) 347.

The instant case is somewhat similar to Henningsen v. Bloomfield Motors, Inc. 32 N. J. 358, 161 A. (2d) 69, 75 A. L. R. (2d) 1. In that case the steering mechanism of the car was so badly damaged because of the accident that it could not be determined whether there were any defective parts before the accident. The car was new and had only been driven about 10 days. It had not been serviced nor had any problems arisen between the date of delivery and the date of the accident. While plaintiff was driving the car, she suddenly heard a loud noise as if something cracked. The steering wheel spun in her hands and the car veered sharply to the right and crashed into a brick wall. The trial court decided there that the evidence was insufficient to submit the case to a jury on the theory of negligence. However, the case was given to the jury solely on the warranty theory and the jury returned a verdict against the dealer and manufacturer. Both defendants argued on appeal that the proof was not sufficient to sustain a verdict on the breach-of-warranty theory. The New Jersey Supreme Court rejected that argument and held that the circumstances shown from the time of purchase of the car to the date of the accident were adequate to raise an inference that the car was defective and that such condition was causally related to the accident. The court stated (32 N. J. 409, 161 A. [2d] 98):

"* * * Can it reasonably be said that the circumstances do not

warrant an inference of unsuitability for ordinary use against the manufacturer and the dealer? Obviously there is nothing in the proof to indicate in the slightest that the most unusual action of the steering wheel was caused by [plaintiff's] operation of the automobile on this day, or by the use of the car between delivery and the happening of the accident. Nor is there anything to suggest that any external force or condition unrelated to the manufacturing or servicing of the car operated as an inducing or even concurring factor.

"* * * In our judgment, the evidence shown, as a matter of preponderance of probabilities, would justify the conclusion by the ultimate triers of the facts that the accident was caused by a failure of the steering mechanism of the car and that such failure constituted a breach of the warranty of both defendants."

In the case before us plaintiff's car was new—it had been driven for only a week from time to time from the date of delivery to the date of the accident. There was testimony here from which the jury could find that the car was returned three times to defendant's garage for various services resulting from complaints by plaintiff and his wife. The evidence could justify a conclusion by the jury that the accident was more probably caused by a failure of the steering resulting from an internal defect than from an external cause.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.