## FRANCIS M. KERR AND ANOTHER v. CORNING GLASS WORKS.

169 N. W. (2d) 587.

July 11, 1969—No. 41294.

*Reavill, Neimeyer, Johnson, Fredin & Killen* and *John J. Killen, Jr.,* for appellant.

*Johnson & Thomas* and *Ronald W. Thomas,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court and from its order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Plaintiffs, Francis M. Kerr and her husband, David L. Kerr, sought to recover damages from defendant, Corning Glass Works, a New York corporation doing business in Minnesota, on the theory of strict liability for breach of an implied warranty, for injuries suffered by her, medical expense incurred by

Mr. Kerr, and for property damages sustained by both of them due to the breaking of a cooking dish manufactured by defendant. The jury awarded plaintiffs damages of $1,500.

On June 1, 1962, plaintiff David Kerr's mother purchased three or four clear glass baking dishes manufactured by defendant, including the one involved here, at a hardware store in Silver Bay, Minnesota. These dishes were displayed unwrapped on a shelf within the reach of customers. All contained the imprint "Pyrex, oven proof." "Pyrex" is a trade-mark of defendant. The dishes were examined at this time and no defects were discovered. They were then wrapped and given to plaintiff Francis Kerr at a bridal shower on the same day. Subsequently, the dishes were moved in plaintiffs' trailer home to Isabella, Minnesota. On January 4, 1963, some 7 months after the dishes were purchased, while Francis Kerr was removing the dish here involved from a heated oven, with the aid of a pair of potholders, the dish exploded. A piece of glass struck and cut her thigh, and other pieces burned various surfaces in the kitchen.

In a memorandum made a part of its order denying defendant's motion for judgment n.o.v. or a new trial, the trial court stated that the jury could reasonably have found that the Pyrex baking dish was properly used by Mrs. Kerr on six to eight occasions over a period of six months; that there was no testimony to compel a finding of improper handling by intermediate parties; and that on the day in question, while proper use of it was being made, the dish suddenly exploded and disintegrated, strewing glass about plaintiffs' kitchen. We, however, can find no evidence produced by plaintiffs that would support an inference that there was a defect in the product when it was manufactured or when it left defendant's factory.

As we view the record, the pertinent issue before us is whether the evidence is sufficient to sustain the verdict under the theory of a manufacturer's strict liability for selling a defective product.

We think not. See, McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. (2d) 488.

Each of the following elements must be established in order for plaintiffs to recover under the rule of strict liability:

(1)  Plaintiff was injured.

(2)  The injury was caused by defendant's product.

(3)  The injury occurred because defendant's product was defective.

(4)  The defect was present in the product when it was sold by defendant.

See, Prosser, *The Fall of the Citadel*, 50 Minn. L. Rev. 791, 840, relied upon by the parties and trial court herein.

Defendant does not dispute the facts of injury and damage, or that both were caused by the breaking apart of the glass baking dish manufactured by it. Defendant maintains, however, that plaintiffs have failed to establish that the injury occurred because Corning's product was defective and that the defect was present in the product when it was subject to defendant's control.

The action was tried on the theory of res ipsa loquitur, the inference being that a heavy-gauge glass baking dish, represented as "oven proof," would not explode in normal use unless it was defective. The trial court apparently relied on Gardner v. Coca-Cola Bottling Co. 267 Minn. 505, 127 N. W. (2d) 557. However, we feel that the present case should be distinguished from our decisions involving exploding carbonated beverage bottles. In Gardner and in Johnson v. Coca Cola Bottling Co. of Willmar, Inc. 235 Minn. 471, 51 N. W. (2d) 573, we dealt primarily with the contents of the sealed containers there involved and relied upon the well-known results of mishandling. Here the object of our concern is the container without regard to its contents. In the present case, res ipsa loquitur may not be applied because the dish involved was not in the exclusive possession or control of the manufacturer. Jessen v. Schuneman's, Inc. 246 Minn. 13, 73 N. W. (2d) 786. It had not been subject to defendant's con-

trol for at least 7 months and possibly as long as 47 months before the explosion.

Corning's expert, who had been in its employ for more than 30 years, testified as to how glass of this type came to be used for cooking and as to the manufacturing, inspection, and packaging processes of defendant. He stated that the glass was constructed by a carefully controlled process designed to minimize the stresses put into the glass by the manufacturing process and the rapid changes in temperature which the glass undergoes in its normal usage. Although no specific finding was made as to the adequacy of defendant's manufacturing and inspection processes in eliminating baking dishes that do not conform to Corning's standards, we feel that the testimony of the expert sufficiently negated the inference that Corning introduced some tangible defect into the baking dish.

Defendant's expert further testified that nearly all of the glass from plaintiffs' dish was sent to him for examination and that because of his examination he had concluded that this particular dish was caused to break by stresses created in the glass by the heating and cooling of liquids (cooking oils, animal fats, and water) within a bruise ("check") on the inside bottom surface of the dish. He stated that some force—possibly dropping another glass dish on it from a height of a foot or so; hitting it hard against a faucet; the dish hitting a sharp object; or a sharp object hitting the dish—would be required before a fracture of this type would occur.

It is our opinion the evidence here was insufficient to sustain the jury's award of damages under the theory of a manufacturer's strict liability for selling a defective product. Plaintiff admittedly submitted no evidence that the dish was defective when it left defendant's factory. Although the rule of strict liability, as pointed out in McCormack v. Hankscraft Co. Inc. *supra*, does not require plaintiff to prove negligence or that the injured party was in privity with the manufacturer, it is necessary under this rule to prove a defect in the product before it left

defendant's factory. Here, we have no such proof. The dish was out of the control of defendant from between 7 and 47 months before the explosion occurred. As it was on the dealer's shelf for some time, it is reasonable to assume that during that time it could have been handled and examined frequently by employees and prospective purchasers. Thereafter, on June 1, 1962, when plaintiff's mother purchased the dishes at the hardware store, they were taken to the bridal shower the same day. There they were again handled and looked over by the guests, and no apparent defects were observed. Some eight months later, after it had been put into use by the owners six or eight times with no defects having been observed, the dish exploded. Since there was no evidence produced by plaintiffs from which a jury could find that it was defectively manufactured or that it was defective when it left defendant's factory, it is our opinion under the facts and circumstances here that the judgment for plaintiff should be reversed and judgment entered for defendant.

Reversed.