# WILLARD HOLKESTAD AND ANOTHER v. COCA-COLA BOTTLING COMPANY OF MINNESOTA AND ANOTHER.

180 N. W. (2d) 860.

August 28, 1970—No. 41765.

*Faegre & Benson, G. Alan Cunningham,* and *Ludwig B. Gartner, Jr.,* for appellant.

*Robb, Van Eps & Gilmore* and *Douglas Dale Reid, Jr.,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ. Consideration and decision based on briefs by entire court en banc.

ROGOSHESKE, JUSTICE.

This appeal arises out of plaintiffs' action for personal-injury damage resulting from an exploding 16-ounce bottle of carbonated beverage. The jury awarded $1,500 damages to plaintiff

Eileen Holkestad, the injured party, and $500 to plaintiff Willard Holkestad, her husband, against defendant Coca-Cola Bottling Company of Minnesota, Inc. Defendant bottling company appeals from the judgment and the trial court's denial of its post-trial motion for judgment notwithstanding the verdict or a new trial.

The dispositive question presented is whether the circumstantial evidence concerning the nature and character of the accident is sufficient to justify the trial court's submission of the issue of defendant-appellant's liability to the jury under the theory of res ipsa loquitur and to sustain the jury's finding of negligence.

Viewed most favorably to sustain the verdict, the facts and circumstances attending the explosion of the bottle follow. On March 5, 1965, while grocery shopping, plaintiff Eileen Holkestad purchased a six-pack of 16-ounce bottled Bubble Up, a carbonated soft-drink beverage, from defendant Penny's Supermarket, Inc., in Richfield. The six-pack cardboard container was taken by her at arm's level from a self-service beverage display rack and placed in her shopping cart. The bottles purchased were clean, neither dirty nor dusty, and the area of the display rack from which the six-pack was taken was not in disarray. Although the bottles displayed on the 12-foot-wide, 5-foot-high, 18-inch-deep racks were exposed to mishandling by customers, the bottles of the six-pack purchased were neither dropped, bumped, nor struck following the time they were taken from the rack and while they were handled by Mrs. Holkestad, the cashier, and the carry-out boy, who placed the six-pack in the Holkestad automobile on the rear floor immediately behind the driver's seat. Nor was there any evidence of mishandling of the purchased six-pack by the employees of Penny's Supermarket prior to Mrs. Holkestad's taking it from the display rack. It was delivered by defendant Coca-Cola (the manufacturer and distributor) as late as 1 day, or as early as 5 days, before its purchase by Mrs. Holkestad. The procedure followed by defendant Coca-Cola and other

beverage distributors in delivering a supply of beverages to the supermarket was as follows: After having the delivery checked by the stockman, the distributor's employee would bring the products into the sales area and place them upon the display rack. Except for handling the bottles and containers to restore order on the display rack and during checkout and carry-out, no employee of the supermarket handled the bottles.

After completing the 4- to 5-mile drive to her home without incident, Mrs. Holkestad parked her car in the garage of her home. Alone and emptyhanded, she opened the back door of the automobile, reached in, and as she began to lift the six-pack from the floor of the vehicle, one of the bottles suddenly "exploded," resulting in lacerations of the second and third fingers of her left hand. The weather at the time was normal for the season and the bottles were not exposed to any extremes of temperature. Shortly after the accident, plaintiff Willard Holkestad arrived home and found fragments of glass throughout the rear of the automobile—some larger pieces on the floor, some on the rear seat, and a few smaller pieces near the rear window. That evening, the accident was reported to the manager of the supermarket, who referred the Holkestads to defendant Coca-Cola. Subsequently, Mr. Solsvig, an employee of defendant Coca-Cola, came to the Holkestad home and examined the bottle in the presence of plaintiffs. He pointed out to them an observable difference in thickness of the glass, i. e., that "[t]he bottle was fat on one side and thin on the other," and he referred to a spot on the bottle approximately the size of a quarter, indicating that it was a "soft spot." He took the available pieces of the broken bottle and the container for the purpose of having it tested for defects.[1]

These facts and circumstances were submitted by plaintiffs in their case in chief. At that point, the court, without objection by plaintiffs, granted defendant Penny's Supermarket's motion

---

[1] The bottle was introduced in evidence but admittedly was not in the same condition as when taken by defendant's employee.

for a directed verdict. Defendant Coca-Cola's motion for a directed verdict against plaintiffs' claim of liability alleged in their complaint "on the theories of warranty, strict liability, and negligence" was argued at length. Defendant Coca-Cola contended that there was no evidence of breach of warranty and that the evidence failed to establish any defect in the bottle or any negligence "in its handling or manufacturing of the product." Abandoning their claim of breach of warranty, plaintiffs contended that the evidence was sufficient to permit the case to go to the jury on the theory of res ipsa loquitur and also sufficient to "meet the requirements of our law with respect to submission of the case on the theory of strict liability."

The court granted defendant Coca-Cola's motion for a directed verdict on the theories of breach of warranty and strict liability but denied its motion on the theory of negligence, explaining:

"The Court is of the opinion that there has been no evidence to establish that the bottle was defective; that the bottle in and of itself doesn't establish any defect in it. There has been reference to a 'soft spot,' yet that 'soft spot' was intact, according to the evidence, at the time that Mr. Solsvig pointed it out to the plaintiffs, so it could not be any causation, between the so-called 'soft spot' which was, apparently, the terminology used by Mr. Solsvig, and the explosion of the bottle. Inasmuch as there isn't evidence to establish a defect, this Court is of the opinion that strict liability does not apply. Hence, the motion of the defendant Coca-Cola Bottling Company of Minnesota is granted on that theory.

"However, as to res ipsa loquitur, the motion is denied."

Defendant Coca-Cola (hereafter defendant) then produced two expert witnesses, who had examined the fragments of the broken bottle for the purposes of testing it for defects and determining the cause of breakage. Daniel M. Mahoney, manager of design, development, and quality control for Owens-Illinois (manufacturer of the bottle), who had tested tens of thousands

of bottles and had examined the bottle in question 11 months after the accident, testified that he found the bottle to be normal in all respects and free of defects in material and workmanship. In his opinion, the bottle was not caused to break by internal pressure but by a heavy external impact—an impact greater than would be likely in the normal course of handling—and that it could not have broken in the manner described by plaintiffs. Dr. Oscar G. Fryer, a professor at Drury College who had experience in examining and testing glass containers for a period of almost 30 years and who had testified for Coca-Cola in many explosion cases throughout the United States, examined the bottle 17 months after the accident. He also testified that he found the bottle free of defects and that in his opinion the bottle was broken by a "heavy external blow." Both witnesses explained that they found a "percussion cone" [2] in reconstructing the bottle from the fragments, which "cone" they insisted could result only from an external impact. Both agreed that the breakage occurred contemporaneously with the blow.

At the close of the evidence, defendant's renewed motion for a directed verdict was denied and the court submitted the issue of liability to the jury on the theory of res ipsa loquitur.[3] The

---

[2] The witnesses explained that "a percussion cone is a shearing of the glass on the reverse side of the point [of] the impact," the cone being the part of the glass knocked out with a socket in the shape of the cone remaining in the wall of the glass.

[3] The instructions followed Minnesota Jury Instruction Guides, Instruction 80. With respect to the element of control as the third of four prerequisites for a permissible inference of negligence, the court instructed: "Three, that the Bubble-Up bottle was in the exclusive control of defendant Coca-Cola Bottling Company of Minnesota, Inc., at the time that the negligent act, if any, must have happened. The control which would warrant you in drawing an inference of negligence may not necessarily be control at the time of the accident, but may be control at the time of the negligent act or omission, if any, which subsequently resulted in an injury. The control that the defendant exercised would carry over to the time of the occurrence if the instrumentality

court's instructions presented plaintiffs' claim that defendant "was negligent in using a defective bottle and failed to exercise reasonable care in the inspection thereof"; further, that defendant had a duty to exercise reasonable care in inspecting the bottle to guard against defects; and, finally, expressly permitted the jury to find defendant negligent in failing "to exercise reasonable care in bottling or handling the Bubble-Up which plaintiff purchased. or [*in using*] *a defective bottle which it should. have discovered in the exercise of reasonable care.*" (Italics supplied.) No objections whatsoever were taken to the charge.

Defendant, in its post-trial motion and on this appeal, challenges the sufficiency of the evidence to justify the submission of the issue of negligence to the jury on the theory of res ipsa loquitur, contending (1) that the evidence did not eliminate the possibility of negligent mishandling when the bottle left its control and therefore did not meet the prerequisites for the application of res ipsa loquitur as set forth in Johnson v. Coca Cola Bottling Co. of Willmar, Inc. 235 Minn. 471, 51 N. W. (2d) 573; and (2) contending, in reliance on Larsen v. N. P. Ry. Co. 175 Minn. 1, 220 N. W. 159, and Prosser, Torts (3 ed.) § 40, that the "uncontradicted and unimpeached" opinion testimony of its expert witnesses that the bottle was free of defects and was caused to break by a hard external impact could not be disregarded and completely destroyed any permissible inference of a defective bottle and the negligent use thereof otherwise permitted by the facts and circumstances attending the accident as related by plaintiffs.

Apart from the manifest inconsistency of the court's ruling with reference to the sufficiency of the evidence to permit a finding of a defective bottle, and the court's instruction, we have no difficulty in regarding this case as a classic one for the applica-

---

causing the harm were not improperly used, touched, or interfered with by plaintiff, and used only in the normal manner in which it was intended to be used."

tion of res ipsa loquitur. As is pointed out in Johnson v. Coca Cola Bottling Co. of Willmar, Inc. *supra,* in later cases, and by text writers, the requirement of control as one factor or circumstance has limited significance in applying res ipsa loquitur to products-liability cases. Gardner v. Coca-Cola Bottling Co. 267 Minn. 505, 127 N. W. (2d) 557; Smith v. Hencir-Nichols, Inc. 276 Minn. 390, 150 N. W. (2d) 556; Prosser, Torts (3 ed.) § 39, pp. 222 to 225. Indeed, the clear language of the court's charge relating this element of control to the time of the manufacturer's inspection of the bottle is wholly consistent with our prior decisions. Peterson v. Minnesota Power & Light Co. 207 Minn. 387, 291 N. W. 705; Johnson v. Coca Cola Bottling Co. of Willmar, Inc. *supra.* Plaintiffs were not required to eliminate with certainty all possible causes of the explosion. It is enough if the circumstantial evidence reasonably eliminates improper handling by others or misuse by the injured party, thus permitting the jury to reasonably infer that it is more probable than not that the bottle used was defective. Weggeman v. Seven-Up Bottling Co. 5 Wis. (2d) 503, 93 N. W. (2d) 467; Gordon v. Aztec Brewing Co. 33 Cal. (2d) 514, 203 P. (2d) 522; Prosser, Torts (3 ed.) § 39, pp. 222 to 223.

Nor are we persuaded that defendant's expert testimony destroyed the permissible inference of negligence in defendant's use of a defective bottle. There appears no dispute that plaintiff Mrs. Holkestad was cut by the flying glass from the exploding bottle. The factual dispute related only to the cause of the explosion. This is not a case, as in Larsen v. N. P. Ry. Co. *supra,* where the physical fact that after the accident the threads on the spindle, which was claimed to have blown from a boiler into which it had been turned, were intact, necessarily refuted the permissible inference of negligence, since in common knowledge such an event could not occur without stripping the threads from the spindle. Nor is it like Kerr v. Corning Glass Works, 284 Minn. 115, 169 N. W. (2d) 587, where the lapse of time and the substantial opportunity for mishandling by third parties made

it equally probable that the cause of the explosion of a dish developed after it left the defendant's hands. Where, as in that case, the balance of the probabilities drawn from the circumstantial evidence alone does not preponderate in support of a finding of a defect in the product, neither the principles of res ipsa loquitur nor the rule of strict liability in tort will support a finding of liability in tort. This, however, is a case where the probability drawn from the circumstantial evidence that defendant did or did not use a defective bottle is such that reasonable men could conclude either for or against defendant's liability. Moreover, not only was the testimony of both expert witnesses directly contradicted by Mrs. Holkestad's testimony that she did not strike, bump, or drop the bottle; but because of the expert witnesses' association with defendant and their obvious interest in the outcome of the case, their testimony could scarcely be characterized as impartial and unimpeached. In short, it is evident that the jury simply was not persuaded by defendant's experts that plaintiffs' claim was a phony claim, as defendant's experts' testimony unmistakably implied. It is also to be noted that defendant presented no evidence concerning its exercise of care in the bottling and distribution of its products.

Although not raised until oral argument before the court, the trial court's seemingly inconsistent ruling that the evidence was insufficient to support a finding of a defective bottle at the close of plaintiffs' case in chief, and his submission of the issue of res ipsa loquitur to the jury, thus permitting an opposite finding, does present a problem. It is one we could disregard on the basis that it is raised for the first time on appeal and the trial court was afforded no opportunity to consider or rule on the matter. More importantly, the absence of defendant's challenge to the instruction or reference to this inconsistency in its post-trial motion compels us to regard the court's charge as the law of the case. Schunk v. Wieland, 286 Minn. 368, 176 N. W. (2d) 119. However, because it does concern the vexing problem of whether circumstantial evidence, the core of the res ipsa doctrine, is suffi-

cient to take a case to the jury on the theory of strict liability as well as on the theory of negligence, we feel compelled to make this brief observation. When a plaintiff has proved that he was injured by a product claimed to have been defective, and where the claimed defect is such that there is circumstantial evidence from which it can be inferred that it is more probable than not that the product was defective when it left defendant's hands, absent plaintiff's own want of care or misuse of the product, there is an evidentiary basis for submitting the issue of liability to the jury on both the theory of negligence and strict liability in tort. Of course, the factor essential to the application of res ipsa loquitur—that it must be the kind of event which does not occur in the absence of negligence—is a circumstance tending to prove a defect and not a prerequisite for the application of strict liability in tort. However, the inference from the circumstantial evidence taken as a whole, which we repeat is the underlying basis of the doctrine of res ipsa, would permit recovery against both manufacturer and retail seller on the theory of strict liability, leaving them to pursue their remedies of contribution and indemnity. Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn. L. Rev. 791; Note, 54 Minn. L. Rev. 1109. See, also, Farr v. Armstrong Rubber Co. 288 Minn. 83, 179 N. W. (2d) 64.

Thus, in our view, the trial court erred in granting both defendant supermarket's and defendant Coca-Cola's motion for a directed verdict on the theory of strict liability. Since that decision, however, in no way prejudiced the rights of the appealing defendant, it does not preclude our conclusion that the circumstantial evidence adequately supports the jury's finding of negligence under the law of the case.

Affirmed.

PETERSON, JUSTICE (dissenting).

Resort to the theory of res ipsa loquitur to establish the liability of defendant Coca-Cola Bottling Company is inappropriate

and, without it, the verdict cannot be supported. There is no evidence that the bottle was so defective as to explode in normal use. The evidence establishes, to the contrary, that the explosion of the bottle and the application of external force were concomitant events. Even if we were to disregard the inescapable inference that the explosion was the result of plaintiff's own act of mishandling, considerable time had elapsed since the bottle passed from the exclusive control of this defendant, with obvious opportunity for mishandling by others while it was in the possession of the exonerated defendant, Penney's Supermarket, Inc.

OTIS, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson. Kerr v. Corning Glass Works, 284 Minn. 115, 169 N. W. (2d) 587, controls.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.