Karen SCHAFER, Appellant,

v.

JLC FOOD SYSTEMS, INC., d/b/a Perkins Family Restaurant, defendant and third-party plaintiff, Respondent,

v.

The Restaurant Company, d/b/a Foxtail Foods, third-party defendant, Respondent.

No. A03–779.

Supreme Court of Minnesota.

April 28, 2005.

Kevin S. Carpenter, Carpenter Injury Law Office, St. Cloud, MN, for Appellant.

Roger L. Kramer, Matthew P. Kostolnik, Gislason & Hunter, L.L.P., Minnetonka, MN, for Respondent JLC Food Systems/Perkins.

D. Scott Ballou, Patrick M. Biren, Brownson & Ballou, P.L.L.P., Minneapolis, MN, for Respondent The Restaurant Company, d/b/a Foxtail Foods.

## OPINION

PAGE, J.

Appellant Karen Schafer seeks review of the district court's grant of summary judgment in favor of respondents, JLC Food Systems, Inc., d/b/a Perkins Family Restaurant, and The Restaurant Company, d/b/a Foxtail Foods, in her negligence action alleging that her throat was injured as a result of eating a defective food product—a pumpkin muffin—at a Perkins restaurant. The court of appeals affirmed the district court's decision, holding that Schafer could not prove a prima facie claim of negligence because she could not identify the object that injured her. Schafer asks us to determine whether a restaurant customer can establish a prima facie claim of negligence against the restaurant where she was served without identifying the specific object that allegedly caused her injury. We reverse the grant of summary judgment and remand to the district court.

The underlying facts of this case are relatively simple and straightforward. On January 27, 2001, Karen Schafer went to a Perkins Restaurant in St. Cloud, Minnesota, with a friend and their daughters. At the restaurant, Schafer ordered a pumpkin muffin. She unwrapped the muffin and, using her fork, placed a piece of the muffin in her mouth. Upon swallowing, she immediately felt a "sharp pain" in her throat

and "a choking sensation." After drinking some water and still feeling as though there was something stuck in her throat, Schafer went directly to a hospital emergency room. Before leaving the restaurant, Schafer's friend notified a Perkins employee that, as a result of swallowing a piece of the muffin, Schafer was going to the emergency room. The rest of the muffin was not saved.

At the hospital, a doctor told Schafer that she had a cut on her throat, but the doctor did not observe any object that would have caused the cut. Schafer was prescribed a painkiller and released. Two days later, she returned to the emergency room where she was diagnosed with a throat infection and was hospitalized for three days. According to Schafer, it took her about three months to fully recover. Although Schafer is not able to identify what was in the muffin that caused the problems with her throat, she speculated in her deposition that "it had to have been something sharp and hard."

Schafer sued Perkins, alleging that the pumpkin muffin was in a defective condition unreasonably dangerous to consumers, the defective condition was a direct cause of the injury to her throat, and, as a result of the injury, she suffered damages in the form of medical expenses, loss of earnings, pain, disability, and emotional distress. Perkins, in turn, asserted a third-party claim for contribution against Foxtail Foods, the company that manufactured the muffin mix Perkins used to make the pumpkin muffin.

After some discovery, Perkins and Foxtail moved for summary judgment, arguing that Schafer had failed to establish a prima facie case of negligence because she could not identify the object in the muffin that caused her injury. The district court granted summary judgment on that basis

and the court of appeals affirmed. *Schafer v. JLC Food Sys., Inc.*, No. A03–779, 2004 WL 78022, at *1 (Minn.App. Jan. 20, 2004). In affirming, the court of appeals relied on *Kneibel v. RRM Enterprises*, 506 N.W.2d 664 (Minn.App.1993). *Kneibel* involved a case in which the plaintiff had eaten barbecued spareribs served by a restaurant. 506 N.W.2d at 665. At some point, while chewing on meat from the ribs, the plaintiff heard and felt a "crack" in his mouth and reflexively swallowed the food. *Id.* It was eventually determined that the plaintiff had cracked an otherwise healthy tooth all the way to the jaw. *Id.* The plaintiff was unable to determine what object, if any, caused the cracking sensation that resulted in the broken tooth. *Id.* The plaintiff sued the restaurant and others. *Id.* at 666. The defendants moved for summary judgment, which was granted, and the court of appeals affirmed on the basis that the plaintiff's failure to present evidence identifying the object that caused the alleged harm precluded him from establishing negligence. *Id.* at 666–67.

 On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact; and (2) whether the lower courts erred in their application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990); *see also* Minn. R. Civ. P. 56.03. In a negligence action, the defendant is entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the claim: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty being the proximate cause of the injury. *Gradjelick v. Hance*, 646 N.W.2d 225, 230 (Minn.2002). The elements most relevant in this case are proximate cause and breach.

Schafer argues that circumstantial evidence should be available to a plaintiff in a defective food products case for purposes of establishing liability when no harm-causing object can be identified. Schafer further urges us to adopt section 7 of the Restatement (Third) of Torts: Products Liability (1998), which recognizes reasonable consumer expectations in food products liability cases. Respondents, while conceding that circumstantial evidence should be available in defective food products cases for purposes of establishing liability in cases when the harm-causing object cannot be identified, argue that the circumstantial evidence available in this case is insufficient to support Schafer's claim that the muffin in question was defective.

## I.

To determine the viability of Schafer's claim, we must first establish the proper standard for assessing whether a food product is defective. We note that courts across the country have diverged on the proper test to apply in determining whether food containing an injurious object is actionable. Some courts follow what has been referred to as the "foreign-natural" test, while others have adopted what has become known as the "reasonable expectation" test. *See* Jane Massey Draper, Annotation, *Liability for Injury or Death Allegedly Caused by Food Product Containing Object Related to, but not Intended to be Present in, Product*, 2 A.L.R. 5th 189, 202 (1992).

In affirming the district court's grant of summary judgment, the court of appeals considered both the foreign-natural and the reasonable expectation tests and, relying on its decision in *Kneibel*, held that because Schafer could not identify any object in the muffin that caused her harm she could not, as a matter of law, establish

that the muffin was a defective food product. *Schafer*, 2004 WL 78022 at *2. In essence, the court of appeals rejected both the foreign-natural and the reasonable expectation tests and simply ruled that circumstantial evidence was not available to establish what the harm-causing object was.

The foreign-natural test draws a distinction between the "foreign" and "natural" characteristics of a food product ingredient. Under the test, if an object or substance in a food product is natural to any of the ingredients of the product, there is no liability for injuries caused; if the object or substance is foreign to any of the ingredients, the seller or manufacturer of the product may be liable for any injury caused. *Jackson v. Nestle–Beich, Inc.*, 147 Ill.2d 408, 168 Ill.Dec. 147, 589 N.E.2d 547, 548 (1992); *see also Mix v. Ingersoll Candy Co.*, 6 Cal.2d 674, 59 P.2d 144, 148 (1936) (holding the defendants not liable for a restaurant patron's damages from injuries resulting from alleged negligence and alleged breach of implied warranty because a bone in the chicken pie was a natural substance); *Webster v. Blue Ship Tea Room, Inc.*, 347 Mass. 421, 198 N.E.2d 309, 312 (1964) (holding the defendant restaurant not liable for alleged breach of implied warranty of merchantability because a fish bone was a natural ingredient in a bowl of New England fish chowder served).

The bright-line rule set out in the foreign-natural test, which assumes that all substances that are natural to the food in one stage or another of preparation are in fact anticipated by the ordinary consumer in the final product served, has been called into question. For example, in *Betehia v. Cape Cod Corp.*, 10 Wis.2d 323, 103 N.W.2d 64 (1960), a restaurant patron was injured by a chicken bone in a chicken sandwich and sued the restaurant for breach of implied warranty of fitness and for negligence. *Id.* at 65. The court concluded that it did not logically follow that consumers should expect that every product containing some chicken must as a matter of law occasionally or frequently contain chicken bones or chicken-bone slivers simply because chicken bones were natural to chicken meat. *Id.* at 67. Thus, the court concluded that categorizing a substance as foreign or natural might have some importance in determining the degree of negligence of the processor of food, but it was not determinative of what was unfit or harmful for human consumption. *Id.* The court further concluded that the naturalness of a substance to a food served was important only in determining whether the consumer might reasonably expect to find such substance in the particular type of food served. *Id.*; *see also Ex Parte Morrison's Cafeteria of Montgomery, Inc.*, 431 So.2d 975, 978 (Ala.1983) ("The undesirability of the foreign substance test lies in the artificial application at the initial stage of processing the food without consideration of the expectation of the consumer in the final product served."); *Jackson*, 168 Ill.Dec. 147, 589 N.E.2d at 548–49 (stating that the foreign-natural test was "unsound and should be abandoned"); *Phillips v. Town of West Springfield*, 405 Mass. 411, 540 N.E.2d 1331, 1332–33 (1989) (stating that the foreign-natural test's focus on the product in its natural form failed to recognize that sellers might fairly be held responsible in some instances for natural substances in food that caused injury).

Comparatively, the reasonable expectation test focuses on what is reasonably expected by the consumer in the food product as served, not what might be foreign or natural to the ingredients of that product before preparation. *See Betehia*, 103 N.W.2d at 69. As applied to common-

law negligence, the reasonable expectation test is related to the foreseeability of harm on the part of the defendant; that is, the defendant has the duty of ordinary care to eliminate or remove in the preparation of the food served such harmful substance as the consumer of the food, as served, would not ordinarily anticipate and guard against. *Id.* The majority of jurisdictions that have dealt with the defective food products issue have adopted some formulation of the reasonable expectation test. *See* Restatement (Third) of Torts: Products Liability § 7 rep. n. 1 to cmt. b (1998).[1]

Recognizing the majority view, the Restatement's approach to food products liability cases considers reasonable consumer expectations. The Restatement provides:

> One engaged in the business of selling or otherwise distributing food products who sells or distributes a food product that is defective * * * is subject to liability for harm to persons or property caused by the defect. * * * [A] harm-causing ingredient of the food product constitutes a defect if a reasonable consumer would not expect the food product to contain that ingredient.

*Id.* § 7. Under the Restatement approach, consumer expectations are based on culturally defined, widely shared standards allowing a seller's liability to be resolved by judges and triers of fact based on their assessment of what consumers have a right to expect from preparation of the food in question. *Id.* cmt. b. The Reporters to the Restatement note that the majority view is unanimously favored by law review commentators. *Id.* rep. n. 1 to cmt. b.

■■■ Having considered the two tests and the approach taken by the Restatement, we conclude that the reasonable expectation test is the more appropriate test to follow. Instead of drawing arbitrary distinctions between foreign and natural substances that caused harm, relying on consumers' reasonable expectations is likely to yield a more equitable result. After all, an unexpected natural object or substance contained in a food product, such as a chicken bone in chicken soup, can cause as much harm as a foreign object or substance, such as a piece of glass in the same soup. Therefore, we agree with the majority view and expressly adopt the reasonable expectation test as the standard for determining defective food products liability claims in Minnesota. Accordingly, when a person suffers injury from consuming a food product, the manufacturer, seller, or distributor of the food product is liable to the extent that the injury-causing object or substance in the food product would not be reasonably expected by an ordinary consumer. Whether the injury-

---

1. *See, e.g., Ex Parte Morrison's Cafeteria of Montgomery, Inc.*, 431 So.2d at 978 (stating that "the pivotal issue is what is reasonably expected by the consumer in the food as served"); *Jackson*, 168 Ill.Dec. 147, 589 N.E.2d at 548 ("The reasonable expectation test provides that * * * liability will lie for injuries caused by the substance where the consumer of the product would not reasonably have expected to find the substance in the product."); *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 423 S.E.2d 444, 451 (1992) ("[W]hen a substance in food causes injury to a consumer of the food, it is not a bar to recovery against the seller that the substance was 'natural' to the food, provided the substance is of such a size, quality or quantity, or the food has been so processed, or both, that the substance's presence should not reasonably have been anticipated by the consumer."); *Jim Dandy Fast Foods, Inc. v. Carpenter*, 535 S.W.2d 786, 791 (Tex.Civ.App.1976) ("Reasonable persons might also differ as to whether the piece of chicken in which this particular bone was found was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics.").

causing object or substance in the food product is reasonably expected by an ordinary consumer presents a jury question in most cases. *See Betehia,* 103 N.W.2d at 69.

## II.

Having identified the test to be applied for determining liability in defective food products cases, we now turn to the primary question presented by this case: whether circumstantial evidence may be used to establish a prima facie defective food products claim in cases in which the specific harm-causing object or substance cannot be identified. At oral argument, Schafer argued and Perkins and Foxtail conceded that circumstantial evidence should be available for such purposes. Perkins and Foxtail argued, however, that the circumstantial evidence available in this case was insufficient to permit Schafer's claim to go forward.

As noted, the court of appeals relied on *Kneibel* in affirming the dismissal of Schafer's lawsuit. In *Kneibel,* the court of appeals held that the claim of a plaintiff in a defective food products case could not withstand summary judgment because he failed to present sufficient evidence identifying the harm-causing object. 506 N.W.2d at 667. It has been observed that this bright-line rule "[r]equiring the plaintiff to prove a 'clear defect' seemed unduly harsh under the circumstances" in *Kneibel.* Mike Steenson, *A Comparative Analysis of Minnesota Products Liability Law and the Restatement (Third) of Torts: Products Liability,* 24 Wm. Mitchell L. Rev. 1, 50 (1998). As Professor Steenson noted, the issue in cases such as *Kneibel* is "not whether the plaintiff is able to prove that a harmful agent is 'clearly defective,' but

rather whether the facts justify an inference that the product is defective." *Id.* at 52. In our view, the *Kneibel* rule is unduly restrictive.

We agree with the parties that when the specific harm-causing object is not known circumstantial evidence should be available, if such evidence is sufficient and other causes are adequately eliminated, for purposes of submitting the issue of liability to the jury in defective food products cases. Permitting the use of circumstantial evidence in such cases is consistent with our jurisprudence on the use of circumstantial evidence to infer negligence in other contexts. For example, in a case involving an exploding soft drink bottle, we observed that circumstantial evidence was sufficient to take the case to the jury even though the plaintiff was not able to establish a specific defect in the bottle. *Holkestad v. Coca–Cola Bottling Co.,* 288 Minn. 249, 257, 180 N.W.2d 860, 865–66 (1970); *see also Lee v. Crookston Coca–Cola Bottling Co.,* 290 Minn. 321, 330–31, 188 N.W.2d 426, 433 (1971) (holding that circumstantial evidence supported the inference of defect when the soft drink bottle exploded in the plaintiff's hand absent the plaintiff's own want of care or misuses of the bottle). In *Holkestad,* we stated that

> where the claimed defect is such that there is circumstantial evidence from which it can be inferred that it is more probable than not that the product was defective when it left defendant's hands, absent plaintiff's own want of care or misuse of the product, there is an evidentiary basis for submitting the issue of liability to the jury * * *.

288 Minn. at 257, 180 N.W.2d at 865–66. It is also consistent with the approach taken by the Restatement.[2] *See* Restate-

---

**2.** Section 3 of the Restatement provides:

It may be *inferred* that the harm sustained by the plaintiff was caused by a product

ment (Third) of Torts: Products Liability § 3 (1998).

■ The use of circumstantial evidence, however, is not without limits, nor should it be. In order to address defendants' legitimate concerns about a lack of boundaries for such claims, we hold that in defective food products cases a plaintiff may reach the jury, without direct proof of the specific injury-causing object or substance, when the plaintiff establishes by reasonable inference from circumstantial evidence that: (1) the injury-causing event was of a kind that would ordinarily only occur as a result of a defective condition in the food product; (2) the defendant was responsible for a condition that was the cause of the injury; and (3) the injury-causing event was not caused by anything other than a food product defect existing at the time of the food product's sale. In order to forestall summary judgment, each of the three elements must be met.

## III.

■ Finally, we must apply the test set out above to the facts presented in this case to determine whether Schafer's claim can withstand summary judgment. The record presented here establishes that Schafer purchased a pumpkin muffin at a Perkins restaurant, began eating the muffin while at the restaurant, and experienced a sharp pain and choking sensation immediately after swallowing her first bite of the muffin. According to Schafer, the pain must have been caused by a hard, sharp object. Such an occurrence is not the kind of event that an ordinary consumer would anticipate and guard against. Although the harm-causing object was never identified, Schafer immediately reported her experience to a Perkins employee and went directly to a hospital emergency room. Moreover, the events leading to Schafer's injury occurred in the presence of witnesses, Schafer's friend and their daughters. At the hospital, the doctor who examined Schafer found a cut on her throat.[3] There is no allegation that Schafer had any throat-related ailment immediately preceding her swallowing the first bite of the muffin.

Viewing the circumstantial evidence in the record before us in the light most favorable to Schafer, we conclude that a jury could reasonably infer that Schafer's alleged injury is of a kind that would ordinarily only occur as a result of a defective condition in the pumpkin muffin served by Perkins, that Perkins was responsible for making the pumpkin muffin that caused Schafer's throat injury, and that Schafer's injury was not caused by anything other

defect existing at the time of sale or distribution, *without proof of a specific defect,* when the incident that harmed the plaintiff: (a) was of a kind that ordinarily occurs as a result of product defect; and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.
Restatement (Third) of Torts: Products Liability § 3 (1998) (emphasis added). In cases involving defective food products, "[s]ection 3 may allow a plaintiff to reach the trier of fact when, unable to identify the specific defect, the plaintiff becomes violently ill immediately after consuming the defendant's food product

and other causes are sufficiently eliminated." *Id.* § 7 cmt. a.

3. We note that at oral argument Perkins and Foxtail strenuously argued that there was no evidence establishing that Schafer's throat had sustained a cut. While that may be a fact question to be decided at trial, our summary judgment standard of review requires that we view the evidence before us in the light most favorable to the nonmoving party, Schafer. Here, Schafer testified in her deposition that the doctor who examined her found that her throat had sustained a cut. No other evidence relating to the extent of Schafer's injury is before us.

than a defect in the pumpkin muffin existing at the time of the muffin's sale. Although there may be other evidence available bearing on the severity of Schafer's injury or on Perkins' possible negligence or on Foxtail's potential responsibility, those facts are not in the record. Indeed, the lawyer for one of the respondents conceded at oral argument that summary judgment may have been premature given the record. Thus, we conclude, based on the evidence presented, that there is sufficient evidence for Schafer's claim to go forward and therefore remand to the district court for further proceedings consistent with this opinion.[4]

Reversed and remanded to the district court.

ANDERSON, G. BARRY, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

4. During oral argument, counsel for Schafer specifically asked this court to apply strict liability to this case. Perkins and Foxtail argue that Schafer did not plead a strict liability claim. We decline to address Schafer's strict liability arguments. Whether the complaint sets out a strict liability claim is a question more properly resolved by the district court on remand.